110 N.J. Super. 565 (1970)
266 A.2d 316
A & S MANUFACTURING CO., INC., A NEW YORK CORPORATION, PLAINTIFF,
v.
RICHARD WETZLER AND PAUL SMITH, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided June 15, 1970.
*566 Mr. Robert K. Hartmann for plaintiff (Messrs. Hartmann and Brooks, attorneys).
*567 Mr. George B. Gelman for defendant, Richard Wetzler, (Messrs. Calissi, Gelman, Cuccio and Klinger, attorneys; Mr. Joel L. Shain, on the brief).
MOUNTAIN, J.S.C.
The question before the court is whether defendant Richard Wetzler was properly served in this action. Service was pursuant to R. 4:4-4(a), which permits service upon an individual "by leaving a copy [of the summons and complaint] at his dwelling house or usual place of abode * * *" (emphasis added).
Substituted or constructive service is in derogation of the general common law requirement that there be personal service. Kurilla v. Roth, 132 N.J.L. 213, 216 (Sup. Ct. 1944); Eckman v. Grear, 14 N.J. Misc. 807, 809 (C.P. 1936); 42 Am. Jur., Process, § 61 (1942). Statutes or rules of court providing for such service must be strictly construed and fully carried out in order to confer jurisdiction. Id. The italicized words above have a more restricted meeting than either residence or domicile. Eckman v. Grear, supra, at 809-810; Mygatt v. Coe, 63 N.J.L. 510, 511-512 (Sup. Ct. 1899); 42 Am. Jur., supra. They mean the place where the defendant is "actually living" at the time when service is made. Id; Feighan v. Sobers & Son, 84 N.J.L. 575, 576 (Sup. Ct. 1913) affirmed 86 N.J.L. 356 (E. & A. 1914); Sweeny v. Miner, 88 N.J.L. 361, 364 (E. & A. 1915); Warfield v. Fischer, 94 N.J. Super. 142, 146 (Law Div. 1967); Fidelity Deposit Co. v. Abagnale, 97 N.J. Super. 132, 145 (Law Div. 1967).
New Jersey has a long line of cases dealing with the sufficiency of substituted service at the "dwelling house or usual place of abode." E.g., Mygatt v. Coe; Feighan v. Sobers & Son; Sweeny v. Miner; Eckman v. Grear; and Kurilla v. Roth, all supra; Missell v. Hays, 84 N.J.L. 196 (Sup. Ct. 1913), affirmed 86 N.J.L. 348 (E. & A. 1914); Vredenburgh v. Weidmann, 14 N.J. Misc. 285 (Sup. Ct. 1936); Warfield v. Fischer, and Fidelity Deposit Co. v. Abaganale, supra. Three familiar fact patterns have developed: *568 (1) cases involving members of the military (Eckman v. Grear and Kurilla v. Roth, supra); (2) cases involving college students (Missell v. Hays, Vredenburgh v. Weidmann and Warfield v. Fischer, supra); (3) those involving persons incarcerated in penal institutions (Fidelity Deposit Co. v. Abagnale, supra). In Warfield v. Fischer, supra, however, the court explicitly stated that the distinction is not between absence at school and absence because of military duty and, it might be added, absence because of incarceration, that is determinative. Rather, there is a basic consideration underlying the differing factual patterns. That is:
The design of provisions for * * * substituted service is to afford the defendant actual notice of the action in time to make [a] defense * * *. The principle of reasonable notice is of the essence. * * * the sufficiency of the statutory substitute for personal service depends upon whether it is reasonably calculated to provide the defendant with notice of the action or proceeding and an opportunity to be heard. [Kurilla v. Roth, supra, 132 N.J.L. at 216]
Thus, the likelihood of prompt notice of the suit to defendant is the justification for permitting the substituted service. Warfield v. Fischer, supra, 94 N.J. Super. at 147.
Consequently, in their consideration as to whether there has been service at the "dwelling house or usual place of abode" courts have looked at certain objective factors that implicitly recognize this requirement. They have considered whether there is a "setting of familial disorganization" (Fidelity Deposit Co. v. Abagnale, supra, 97 N.J. Super. at 146), e.g., incarceration in a penal institution, or marital discord (Berryhill v. Sepp, 106 Minn. 458, 119 N.W. 404 (Minn. Sup. Ct. 1909); whether there is a regular pattern of residence at the place where service has been made (compare Warfield v. Fischer, supra, with Feighan v. Sobers & Sons, supra); whether the dwelling where service is made is occupied at the time of service (Mygatt v. Coe, supra; Sweeney v. Miner, supra, 88 N.J.L. at 363-364) and whether the defendant has removed his personal belongings from the dwelling place (Eckman v. Grear, supra, 14 N.J. *569 Misc. at 808; but see Kurilla v. Roth, supra, 132 N.J.L. at 217) in determining whether the defendant was "actually living" at the dwelling when service was made.
In the case of a married man, as here, the house where his wife and family resides is prima facie or presumptively his "dwelling house or usual place of abode." Holtberg v. Bommersbach, 236 Minn. 335, 52 N.W.2d 766 (Minn. Sup. Ct. 1952); 42 Am. Jur., Process, § 61. The presumption, however, is one of fact and not of law, and may be rebutted. Id.
Where a person had been a Minnesota resident, but left six hours before service and was en route to another state where he intended to commence work and establish a permanent domicile, the Supreme Court of Minnesota held his "usual place of abode" was still his Minnesota house wherein his wife continued to reside in order to complete moving arrangements. Walker Employment Service, Inc. v. Swanson, 278 Minn. 368, 154 N.W.2d 823 (1967). In the case at bar the defendant was already working and living in Canada when the service in question was made in New Jersey.
In another similar case, the Supreme Court of Iowa held that where a man leaves his family and goes to work in anther state intending to make it his and his family's permanent home 18 months before service upon his wife at the old residence, there was not proper service at his "usual place of residence." Schlawig v. De Peyster, 83 Iowa 323, 49 N.W. 843 (1891). The time lapse before service in the instant case was 43 days rather than 18 months.
Defendant, in the case at bar, entered into a contract to sell his New Jersey home on December 23, 1969, with the closing scheduled for February 28, 1970. The closing was delayed until April 2, 1970 due to difficulties encountered in searching the title. Defendant departed, with his personal possessions, on January 26, 1970 to begin immediately working in Canada for Maple Roll Leaf Co. Ltd. Upon entering Canada he signed a Canadian application for permanent admission stating his intention to have his *570 wife and child join him and his further intention to bring his furniture, car, etc., into Canada. Service was made upon his wife at the New Jersey residence on March 10, 1970. There was no marital discord; the parties exhibited an intention to reunite and settle together in Canada. Wetzler visited his wife and child at the New Jersey residence on three or four weekends between the time he left for Canada and the date of service. On March 2, 1970 defendant signed a lease of a residence property in Canada. The lease contains an option to purchase. I am aware that there are conflicting affidavits as to the existence of the apartment to which defendant allegedly moved in Canada. It is, however, unnecessary to establish a new particular dwelling place in order to disprove a contention that one is living at the old dwelling.
In light of the aforementioned principles of law I find the following objective factors, indicative of defendant's intention, determinative: (1) his sale of his New Jersey home on December 23, 1969; (2) his application on January 26, 1970 for permanent admission into Canada; (3) his having taken his personal belongings with him to Canada, and (4) his employment in Canada for 43 days before service was effected. Thus, I find that the place defendant was "usually found" when service was made was not 838 Warwick Turnpike, Hewitt, New Jersey; that that house was no longer his "present place of abode," and that he was not "actually living" at that address when service was attempted.
Counsel will submit an order vacating service of process.