UNITED BANK OF LOVES PARK, Plaintiff-Appellee, *v.* J. PATRICK DOHM *et al.*, Defendants-Appellants.

Second District No. 82—609

Opinion filed June 9, 1983.—Rehearing denied July 13, 1983.

J. Patrick Dohm, of Rockford, for appellant, *pro se.*

Theodore Liebovich, of Remencius, Liebovich and Gaziano, of Rockford, for appellee.

PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

J. Patrick Dohm and Ingrid Dohm, as beneficiaries of a land trust, seek to vacate the sale of real estate made under a decree of foreclosure entered by default. They contend that J. Patrick Dohm was not properly served in the original foreclosure action by substituted service on his wife at their Rockford house because at the time of the service his usual place of abode, at which service was required to be made, was in Chicago, not Rockford. He also contends that the First National Bank & Trust Company of Rockford, as trustee under trust No. 4774, holding record title to the subject real estate, was not properly served.

I

The claim of improper substituted service of process is based on section 2—203 of the Code of Civil Procedure, which provides as relevant:

> "[S]ervice of summons upon an individual defendant shall be made (a) by leaving a copy thereof with the defendant personally or (b) by leaving a copy at the defendant's *usual place of abode*, with some person of the family *** provided the officer or other person making service shall also send a copy of the summons *** addressed to the defendant at his or her *usual place of abode*. The certificate of the officer or affidavit of the person that he or she has sent the copy in pursuance of this Section is evidence that he or she has done so." (Emphasis added.) Ill. Rev. Stat. 1981, ch. 110, par. 2—203.

Defendants argue that delivery of a copy of the complaint and summons to Ingrid Dohm, the wife of J. Patrick Dohm, at their residence in Rockford did not comply with the statute because his "usual place of abode" at the time of service was an apartment in Chicago, not the Rockford house.

■ Initially we consider the argument of the plaintiff, United Bank of Loves Park, that service was waived when J. Patrick Dohm entered his appearance on the petition to vacate the decree of foreclosure. It argues that defendant, by arguing nonjurisdictional issues such as adequacy of price at the sheriff's sale, waived the right to contest the propriety of the service of process. The defendant, however, made no appearance in this case until after the entry of the judgment of foreclosure. Moreover, the petition to vacate, though attacking the propriety of the post-decree sheriff's sale, does not argue the merits of the foreclosure action itself. For these reasons the petition to vacate did not amount to a waiver of the right to contest the service of process. See *Sullivan v. Bach* (1981), 100 Ill. App. 3d 1135, 1141-42.

The sheriff's return on the summons states that the summons was served and mailed on October 7, 1980. Dohm testified that he was employed as a commodity investment program salesman in Chicago from September 26, 1980, through January 19 or 20, 1981, and that during this time he resided in an apartment in Chicago. He stated that previously he had resided at the home in Rockford where service was made and that he moved back to Rockford on either January 19 or 20, 1981. He said that while he worked in Chicago he "sometimes" but "not always" made trips back to Rockford on the weekends but doubted that he made any trips back to Rockford during the week. Throughout the period in question his wife and children continued to reside at the Rockford address. Dohm testified that he was "absolutely not" separated from his wife in the "marital sense." He said that his wife and children did not join him in Chicago at any time during this period.

Dohm testified that throughout the time that he was employed in Chicago his family's household furniture remained in the Rockford house. He did not change the address on his Illinois driver's license or his social security registration, nor did he have his personal mail forwarded to his Chicago address. He decided to change employment after a downturn in the commodities market, which by early December 1980 had made his job less remunerative. He therefor did not reside in Chicago at any time after January 20, 1981.

Neither party had directed us to any Illinois case directly in point,

nor have we found any. On the record before us the rulings in other jurisdictions on the question of "usual place of abode" do not support Dohm's contention that although the home in Rockford remained his residence it was not his place of abode for service of summons.

■■ A defendant's "usual place of abode" is a question of fact. (*Plonski v. Halloran* (1980), 36 Conn. Supp. 335, 337, 420 A.2d 117, 118; *Holtberg v. Bommersbach* (1952), 236 Minn. 335, 338, 52 N.W.2d 766, 769.) No hard and fast definition of "usual place of abode" can be laid down and each case must turn on its particular facts. *Karlsson v. Rabinowitz* (4th Cir. 1963), 318 F.2d 666, 669; *Capitol Light & Supply Co. v. Gunning Electric Co.* (1963), 24 Conn. Supp. 324, 326, 190 A.2d 495, 496.

There is a rebuttable presumption that the house where a man's wife and children reside is his "usual place of abode." (*A&S Manufacturing Co. v. Wetzler* (1970), 110 N.J. Super. 565, 569, 266 A.2d 316, 318; *Holtberg v. Bommersbach* (1952), 236 Minn. 335, 338, 52 N.W.2d 766, 769.) Among the factors a court may consider to determine whether the presumption has been overcome are the state of the marriage at the time of service, the frequency of the husband's contacts with the house in which the family has been residing, the defendant's intent or lack of intent to abandon this residence permanently or to move his family elsewhere, whether the defendant has removed his personal belongings from this residence, the defendant's address for voter registration, driver's license, mail delivery and other purposes, and whether the wife and children continue to live at the residence. (*A&S Manufacturing Co. v. Wetzler* (1970), 110 N.J. Super. 565, 569, 266 A.2d 316, 318; see, *e.g., Schlawig v. De Peyster* (1891), 83 Iowa 323, 49 N.W. 843 (intent to move family permanently to new residence); *Household Finance Corp. v. McDevitt* (1973), 84 N.M. 465, 505 P.2d 60 (marital difficulties, no later return to residence).) The underlying consideration is whether substituted service at the chosen dwelling place is reasonably likely to provide the defendant with actual notice of the proceedings. *Karlsson v. Rabinowitz* (4th Cir. 1963), 318 F.2d 666, 668; *VanBuren v. Glasco* (1975), 27 N.C. App. 1, 5, 217 S.E.2d 579, 582; *cf. White v. Primm* (1865), 36 Ill. 416, 418 (hotel or boarding house where party is staying for a few days is not "his usual place of abode").

In *VanBuren*, the defendant received substituted service in August 1973 at a North Carolina house owned by him and his wife and at which his wife and children resided at the time of service. In the spring of 1972 defendant had moved to South Carolina to organize and conduct a business. He had resided and worked in South Carolina

since leaving North Carolina. He had returned to visit his family in North Carolina fairly regularly, though not an average of more than two weekends a month, in this period. The appellate court affirmed a trial court finding that defendant had received substituted service at his usual place of abode, emphasizing that the family's continuous residence at the North Carolina house and the defendant's regular visits there gave the defendant a close, enduring connection with the North Carolina residence and provided a reasonable probability that substituted service would reach him promptly.

In *Husband v. Crockett* (1938), 195 Ark. 1031, 115 S.W.2d 882, the defendant received substituted service by the sheriff's delivery of a copy of the summons to her husband at the hotel where he resided and she had previously resided with him. The court, defining "usual place of abode" as "residence," stressed that relations between defendant and her husband were not entirely severed at the time of the service, and that since moving away defendant had made several visits to her husband at the residence. It upheld the service to defendant.

In *Lovin v. Hicks* (1911), 116 Minn. 179, 133 N.W. 575, defendant lived in Thief River Falls with his wife until March 1910, when he left for Verndale to conduct a new business. The sheriff served the summons and complaint on his wife at the Thief River Falls residence. The appellate court upheld the service, noting that the presumption that the defendant's usual place of abode was the residence of his wife and family was reinforced by the fact that he had registered and voted there in the 1910 elections.

In *Dorus v. Lyon* (1917), 92 Conn. 55, 101 A. 490, the defendant moved to an apartment in New York City from Bridgeport, Connecticut, but continued to spend three days per week for much of the year at his Bridgeport residence and remained registered to vote in Bridgeport. The court affirmed a finding that the Bridgeport residence was his usual place of abode.

In *Clegg v. Bishop* (1927), 105 Conn. 564, 136 A. 102, the decedent owned and occupied a house in Brooklyn, New York, from 1910 to 1921. During this period he also owned a farm in Connecticut. From about April 1 until the fall of each year he lived on the farm with his wife, but from April 1 to August 1 he was generally there on weekends only, though his wife was there full-time during this period. Over the entire period some mail came to and from the decedent at his Connecticut address. The court found that the decedent had a usual place of abode at the farm from early April to the fall of each year from 1910 to 1921.

Other cases support a finding that merely by moving into a new residence a defendant does not necessarily prevent his previous dwelling from being his "usual place of abode." *Rich Products Corp. v. Diamond* (1966), 51 Misc. 2d 675, 273 N.Y.S.2d 687; *Minnesota Mining & Manufacturing Co. v. Kirkevold* (D. Minn. 1980), 87 F.R.D. 317; *Karlsson v. Rabinowitz* (4th Cir. 1963), 318 F.2d 666.

Cases in which the presumption that the usual place of abode of one spouse is the residence of the other spouse and/or the family has been overcome have involved factors not present here, *e.g.,* marital discord and permanent removal. *Household Finance Corp. v. McDevitt* (1973), 84 N.M. 465, 505 P.2d 60; *Holdberg v. Bommersbach* (1952), 52 N.W.2d 766; *Schlawig v. De Peyster* (1891), 83 Iowa 323, 49 N.W.2d 843; *A&S Manufacturing Co. v. Wetzler* (1970), 110 N.J. Super. 565, 266 A.2d 316.

■ We conclude that defendant J. Patrick Dohm's Rockford house was his "usual place of abode" and that the substituted service was thus sufficient. At the time of service, he had not been residing away from the Rockford house for long and would soon move back. His ties with the Rockford residence remained intimate, unbroken and substantial during the whole time he was working in Chicago. His wife and children resided at the Rockford address full time and there was no indication that the family intended to move out of the Rockford residence. Defendant retained his Rockford address for numerous purposes and remained in reasonably regular touch with his family. No marital separation was planned or threatened.

## II

Defendants also argue that the defendant trustee was not properly served for the reason that "Barb Baxter" was not shown to be an officer or agent of the First National Bank & Trust Company of Rockford. Defendants rely on paragraph 2—204 of the Code of Civil Procedure, which provides that a private corporation may be served "by leaving a copy of the process with its registered agent or any officer or agent of said corporation ***." Ill. Rev. Stat. 1981, ch. 110, par. 2—204.

We cannot agree. In an affidavit filed with the court, Barb Baxter swore that on October 8, 1980, she was employed as an agent of the Rockford bank as a clerk in the customer services department; that on that day at 3:50 p.m. she was personally served with summons in this case by a deputy sheriff of Winnebago County; it was one of her normal duties as a clerk in the customer services department to accept service of process and she had been authorized by and on behalf

of the bank to accept process; she was informed and believed that the acceptance process was a duty which the bank had designated to customer service representatives, and the summons served on her was forwarded to the trust department of the bank on or about the date of service.

At the hearing Wendell Craft, an assistant vice-president of the bank, testified that it was longstanding bank policy, which he had established, to route summonses through the customer services department, where they would be handled by clerks such as Barb Baxter. On October 8, 1980, Barb Baxter was an employee of the bank and one of her duties was to accept service of process. Barb Baxter's name was not on corporate lists of certified corporate officers and directors for October 1 through October 10, 1980.

■ We are satisfied from the record that Barb Baxter was an agent of the Rockford bank for receipt of process and that she understood the purport of the service of summons and her duty to deliver the document. That she was a clerk rather than a registered officer of the corporation is not important. *Megan v. L.B. Foster Co.* (1971), 1 Ill. App. 3d 1036, 1038. See also *Island Terrace Apartments v. Keystone Service Co.* (1975), 35 Ill. App. 3d 95, 98-99.

In view of our holding, the motion of the defendants to supplement the relief sought in the notice of appeal which we ordered taken with the case is denied. The judgment of the circuit court of Winnebago County is therefore affirmed.

Affirmed.

UNVERZAGT and HOPF, JJ., concur.