2022 IL App (1st) 210409

No. 1-21-0409

Opinion filed February 1, 2022

SECOND DIVISION

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE DEPARTMENT OF HEALTHCARE AND FAMILY SERVICES *ex rel.* LISA SANDERS, | ) ) ) | Appeal from the Circuit Court of |
| Petitioner-Appellant, | ) ) | Cook County, County Department, |
| v. | ) ) | Domestic Relations Division. |
| DEMOND EDWARDS, | ) ) ) | No. 03 D 90464 |
| Respondent-Appellee. | ) ) ) ) ) | Honorable Gregory E. Ahern, Jr., Judge Presiding. |

_____

PRESIDING JUSTICE FITZGERALD SMITH delivered the judgment of the court, with opinion.
Justices Lavin and Cobbs concurred in the judgment and opinion.

**OPINION**

¶ 1     This appeal stems from a 2003 petition filed by the Department of Healthcare and Family Services (the Department) on behalf of Lisa Sanders seeking to establish that the respondent, Demond Edwards, was the father of her minor child, Demarion, and to set child support obligation for him. After conducting a hearing at which the respondent failed to appear, the circuit court

granted the Department's petition and entered a default child support order against him. Sixteen years later, the respondent filed a motion to quash service and challenged the support order as void based on an alleged defect in the substitute service of process made on him. After an evidentiary hearing, the circuit court granted the respondent's motion to quash service and found that the child support order was void. The Department now appeals. For the following reasons, we reverse and remand.

¶ 2                                    I. BACKGROUND

¶ 3     The record below reveals the following relevant facts and procedural history. In February 2003, pursuant to the Uniform Interstate Family Support Act (UIFSA) (750 ILCS 22/100 *et seq.* (West 2002)) the Department filed a petition on behalf of Sanders, seeking to determine the existence of a parental relationship between the respondent and Sanders's minor son, Demarion, and to establish the respondent's child support obligation. The petition alleged that the respondent was Demarion's biological father and that he was obligated to provide child support.

¶ 4     The Cook County Sheriff's Department certified substitute service of process on the respondent. According to that certificate, on April 22, 2003, a copy of the UIFSA petition and summons were left at the respondent's usual place of abode, at 13634 South Lowe Avenue, in Riverdale, Illinois. The certificate states that service was left with an individual named "Prez," who identified herself as over 13 years of age, a resident of the household, and the respondent's mother. The certificate further notes that this individual was an African American woman, approximately 43 years of age.

¶ 5     After the respondent failed to answer the UIFSA petition or appear in court, on August 14, 2003, the circuit court held a hearing in his absence and entered an order finding that he was Demarion's biological father. On September 29, 2003, the circuit court entered a default judgment

against the respondent, finding that he owed $1803 in retroactive child support. The court additionally entered a monthly child support obligation of $300.50 plus $10 per month to pay down the arrears, noting that the respondent's obligation would end in November 2020, when Demarion turned 18.

¶ 6    Sixteen years after the child support order was entered, on June 18, 2019, the respondent filed the instant motion to quash service and set aside the child support order as void. In his motion, the respondent alleged that he first learned of the child support order in February 2019, during settlement negotiations in an unrelated matter. He contended that he never received proper service of process because 13634 South Lowe Avenue was not his usual place of abode. Further, the respondent argued that substitute service was *per se* unreasonable because, at the time of service, he was in the custody of the Cook County Sherriff's Department. The respondent therefore argued that the court should quash service and declare all the orders entered in the child support proceedings void.

¶ 7    In support of his motion, the respondent attached (1) an affidavit from his mother, Leathritiea Perez and (2) a printout from the Cook County Sherriff's website showing that he was incarcerated there between March 14, and May 5, 2003.

¶ 8    In her affidavit, Perez attested that in April 2003, she was 46 years old and lived at 13634 South Lowe Avenue in Hillside, Illinois. She stated that the respondent, who was her son, never resided there and that she was not aware of his whereabouts in 2003. Perez further attested that she could not recall receiving any court related documents for the respondent in 2003, either in person or in the mail. In addition, she attested that she was likely not at home at the time of service because she was usually out of the house on weekdays between 7 a.m. and 6:30 p.m.

¶ 9    On August 9, 2019, the Department filed its response, arguing that the respondent's motion

to quash should be denied. The Department asserted that, as a matter of law, the Cook County Sheriff's certificate of service could not be set aside absent clear and satisfactory evidence. The Department argued that Perez's self-serving affidavit did not constitute such clear and satisfactory evidence because Perez used only noncommittal statements, such as that she did not "recall" receiving the summons and that "usually" she was out of the house at the time service would have been made.

¶ 10    In addition, the Department pointed out that Perez's affidavit stated that the respondent never resided with her in Hillside, whereas the Sherriff's certificate stated service was completed in Riverdale, Illinois. To the contrary, the Department pointed out that the respondent's work records, which were obtained by way of a subpoena to the respondent's employer on August 19, 2003, revealed that as early as December 2002, the respondent resided at 13634 South Lowe Avenue in Riverdale. Additionally, according to the Department, the respondent's arrest records indicated that a month before substitute service was made, in March 2003, he was transported to the Riverdale police lockup where his state issued identification (ID) revealed that his residence was 13634 South Lowe Avenue.

¶ 11    Lastly, in its response, the Department argued that the motion to quash should be denied because the respondent had made material misrepresentations of facts and had unclean hands. In this respect, the Department pointed out that contrary to the respondent's assertion that he did not become aware of the child support order until 2019, the respondent had, in fact, paid some child support beginning in 2008 and had sent a signed request for a downward modification in that child support to the Department in 2012.

¶ 12    In support, the Department attached copies of the respondent's (1) 2002 work records, (2) 2003 arrest records, and (3) the 2012 letter requesting a downward modification in child

support.

¶ 13    In addition to its response, on August 9, 2019, the Department filed a request to admit, asking that the respondent admit, *inter alia*, that (1) in 2002, he lived at 13634 South Lowe Avenue in Riverdale and (2) in 2003, during his arrest, he provided the Riverdale address as his residence. The Department also asked the respondent to admit that he knew about the child support order prior to 2019 and that he had made some payments on that order beginning in 2008.

¶ 14    On August 30, 2019, the respondent filed his responses to the request to admit. Therein, he denied ever living at 13634 South Lowe Avenue, including in 2002 or at the time of his arrest in 2003. The respondent admitted to having signed and sent the 2012 modification of child support request but stated that he did not recall having done so until receiving the Department's response. The respondent further denied making any child support payments since 2008. In addition, he stated that he could not recall any wage garnishment or other involuntary collections made under that child support order.

¶ 15    On September 3, 2019, the respondent filed his reply asserting that contrary to the Department's position, the Sherriff's certificate is not presumptively valid and could be attacked with the affidavit submitted by his mother, Perez. In addition, the respondent asserted that absent any counteraffidavits from the Department, the court was required to accept Perez's affidavit as true. With respect to that affidavit noting Perez's address as being in Hillside, instead of Riverdale, the respondent asserted that this was a typo.

¶ 16    In addition, the respondent argued that the evidence submitted by both parties at best showed that in 2003 he lived a transient lifestyle and that 13634 Lowe Avenue was his temporary mailing address, rather than his usual place of abode.

¶ 17    Finally, the respondent argued that because service must be reasonably calculated to

provide actual notice, attempting substitute service in Riverdale when he was in Cook County jail was *per se* unreasonable.

¶ 18    On January 3, 2020, the circuit court set a hearing date for the motion to quash and ordered the parties to exchange any relevant documents and witness lists. In response, the Department offered the following list of intended exhibits: (1) the April 22, 2003, service of summons; (2) the respondent's employment verification from his employer in 2002; (3) the notice of opportunity to request modification of child support addressed to the respondent and dated August 28, 2012; and (4) an arrest report for the respondent dated March 12, 2003, indicating his residence was at the Riverdale address. In turn, the respondent indicated that he would rely on, *inter alia*, (1) his mother's affidavit and (2) a report of his entire criminal history dated May 18, 2018. In addition, the respondent offered an affidavit from his wife, Tiffany Rayford.

¶ 19    In her affidavit, Rayford attested that in April 2003, she resided at East 81st Street and Drexel Avenue in Chicago. At that time, Rayford was dating the respondent and he sometimes lived with her, "but often stayed for a week at time or more with different friends and acquaintances." She also stated that "[t]o [her] knowledge," the respondent never resided at 13634 South Lowe Avenue, in Riverdale.

¶ 20    On March 10, 2020, the circuit court held an evidentiary hearing on the respondent's motion to quash service. Both the respondent and his wife testified on the respondent's behalf.

¶ 21    The respondent first testified that prior to moving to South Bend, Indiana, in 2006 or 2007, he always lived in Chicago with Rayford, to whom he is presently married and with whom he has five children. The respondent denied ever having lived at 13634 South Lowe Avenue in Riverdale or that the Riverdale address was ever on his state ID.

¶ 22    With respect to the period between 2002 and 2003, the respondent testified that while he

mostly resided with Rayford, he lived a transient lifestyle. Whenever Rayford and he argued, the respondent would leave their home for three to four days and live with friends or squat at his mother's previous residence at 8904 South Halsted Street in Chicago.

¶ 23    Referring to his 2018 criminal history report, which was introduced as an exhibit at the hearing, the respondent acknowledged that between December 2002 and December 2003, he was arrested five times. Four out of those five times the arrest report reflected that his address was 8904 South Halsted Street, in Chicago.[1] Only once, on March 12, 2003, did that report list 13634 South Lowe Avenue, in Riverdale, as his address. The respondent explained that this likely occurred because the March 12 arrest was for a domestic battery that occurred at the Riverdale address and that therefore the arresting officer must have assumed that this was his residence. He further averred that at that time of the arrest, the officer never asked him for his ID.

¶ 24    The respondent next denied ever being served with a summons containing the UIFSA petition. He further denied that his mother ever gave him the summons or told him that she received one.

¶ 25    The respondent explained that on April 22, 2003, when his mother was purportedly served with substitute service, he was incarcerated in the Cook County jail. The respondent acknowledged that the Cook County jail records revealed that he was incarcerated between March 14 and May 5, 2003.

¶ 26    On cross-examination, the respondent confirmed that in 2012, he signed a request for a downward modification in his child support that he sent to the Department. He claimed, however, that he was unaware that it was for the child support order in this case. The respondent explained

---

[1]The Halsted Street address is listed for the following arrest dates: December 29, 2002, March 2, 2003, May 15, 2003, and December 6, 2003.

that upon advice from his fellow inmates he filled out a general form to find out whether he had any child support orders, and that when he received a prefilled form in response containing the information about this case, he signed and sent it back to try and get a modification. He claimed that did not pay attention to the form, even though it contained the case number and the name of the custodial parent (Sanders) and the minor child (Demarion). The form identifying this case was the only one he received back from the Department, and he understood the modification never occurred. The respondent also testified that he has never met Demarion or spent any time with him.

¶ 27    On cross-examination, the respondent also stated that, although he was not aware of it at the time, he now knows that in 2008 and 2009, money was garnished from his paychecks to pay for the child support and arrears in this case. When asked if he noticed the deductions in his paycheck, the respondent claimed that he was "making so much money" in his job, he "never even" recognized the deduction or "missed [the money]." In addition, while the respondent acknowledged that in 2008 the Internal Revenue Service (IRS) seized his $4000 tax return, he claimed that he did not know that the money was taken to pay his child support obligation. The respondent claimed that while he attempted to telephone the IRS to find out why the tax return had been seized, after being put on hold numerous times, he stopped pursuing the issue.

¶ 28    When questioned as to why his employment record dated December 26, 2002, listed 13463 South Lowe Avenue as his address, the respondent explained that because he "was in between different houses," and his mother was "the most reliable person to get [his] mail," he used his mother's house as his mailing address. As he explained, "I knew that if I had any important mail that came, my mom's address was the place to send it, and she would *** let me know that I have

mail."

¶ 29    The respondent further testified that he has 24 children in total (5 being with his wife, Rayford). He averred, however, that when in 2012 he submitted the modification of child support request from prison, he did not believe he was subject to any child support orders.

¶ 30    The respondent's wife, Tiffany Rayford next testified that she has known the respondent for 22 years and that they have five children together. She stated that in 2003, she lived in Chicago with her children and "sometimes" the respondent, with whom she was "on and off." She averred that the respondent did not stay with her when they were "on break," and that she did not know where he went then.

¶ 31    Rayford further testified that she was certain that the respondent never lived with his mother in Riverdale in 2003.

¶ 32    On cross-examination, Rayford was asked about the discrepancy in her affidavit, where she had stated that "to her knowledge" the respondent did not live in Riverdale with his mother in 2003, and the certainty that she was expressing now. Rayford responded that "she might have worded it wrong" in her affidavit, but that she was certain that the respondent did not live with his mother in Riverdale. She stated that she was well acquainted with the respondent's mother and that the two of them communicated in 2003.

¶ 33    On cross-examination, Rayford was asked whether she was aware that the respondent had other children out of wedlock. She testified that to her knowledge outside of the five children they share together, the respondent has only two or three other children.

¶ 34    Rayford also acknowledged that she had an interest in the respondent not owing any child support or arrears to Sanders because the two of them supported four of their own children and

some grandchildren who were living at home.

¶ 35    On August 6, 2020, the circuit court granted the respondent's motion to quash service and vacated the relevant child support orders as void.

¶ 36    In its written order explaining its reasoning, the circuit court first rejected the respondent's argument that his usual place of abode changed when he was taken into custody by the Cook County Sheriff and that the only proper service in that scenario was personal service in jail. Based on the respondent's 50 arrests and numerous incarcerations, and his own statements that his mother's house was the best place for him to receive important documents, the court found that 13634 South Lowe Avenue was the most reasonable place for service on the respondent and to provide him notice of the action. In doing so, the court analyzed all the evidence presented at the hearing and found both the respondent and Rayford to be incredible witnesses. The court likewise gave little credence to Perez's affidavit, particularly since she did not testify at the hearing.

¶ 37    The court nonetheless found that because process in this case was effectuated by substitute service, rather than personal service, the sheriff's certificate was insufficient to establish that 13634 South Lowe Avenue was the respondent's usual place of abode. In doing so, the court cited *Sterne v. Forrest*, 145 Ill. App. 3d 268, 274 (1986), for the proposition that "where the return is challenged by affidavit, and there are no counter-affidavits, the return itself is not even evidence, and absent testimony by the deputy, the affidavits must be taken as true, and the purported service of summons quashed." The court held that because the Department did not file any counteraffidavits and did not call the sheriff's deputy to testify, it was required to take the statements offered by the respondent in Perez's affidavit as true. Since that affidavit stated that the respondent did not reside at 13634 South Lowe Avenue, the court believed that under *Sterne* it was compelled to grant the

respondent's motion to quash service and vacate the child support orders.

¶ 38    On September 20, 2020, the Department filed a motion to reconsider, arguing that the circuit court had misinterpreted *Sterne* and that the documentary evidence and the cross-examination of the respondent's witnesses was sufficient to rebut Perez's affidavit.

¶ 39    On January 22, 2021, the circuit court held a hearing on the motion to reconsider.[2] Three months later, on March 11, 2021, the circuit court entered a written order denying the Department's motion. The Department now appeals.

¶ 40                                II. ANALYSIS

¶ 41    On appeal, the Department asserts that the circuit court erred in granting the respondent's motion to quash service because it misinterpreted *Sterne*. For the following reasons, we agree with the Department.

¶ 42    It is axiomatic that a court must have personal jurisdiction over the parties to enter a valid judgment. *U.S. Bank National Ass'n v. Johnston*, 2016 IL App (2d) 150128, ¶ 27. Personal jurisdiction may be established by either service of process as provided by statute or by a party's voluntary submission to the court's jurisdiction. *BAC Home Loans Servicing, LP v. Mitchell*, 2014 IL 116311, ¶ 18. Service of process protects a party's right to due process through proper notification and providing an opportunity to be heard. *Johnston*, 2016 IL App (2d) 150128, ¶ 28. "[A] failure to effect service as required by law deprives a court of jurisdiction over the person, and any default judgment based on defective service is void." *Id.*; see also *Bank of New York Mellon v. Karbowski*, 2014 IL App (1st) 130112, ¶ 12. This is true irrespective of whether the defendant had actual knowledge of the proceedings. *Sutton v. Ekong*, 2013 IL App (1st) 121975, ¶ 24; see also *State Bank of Lake Zurich v. Thill*, 113 Ill. 2d 294, 308 (1986). A default judgment

---

[2]The record before us does not contain a transcript from this hearing.

that is void due to lack of personal jurisdiction may be attacked at any time in any court, either directly or collaterally. See *R.W. Sawant & Co. v. Allied Programs Corp.*, 111 Ill. 2d 304, 309 (1986).

¶ 43    A petition under section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2020)) is the appropriate pleading to vacate a void judgment, such as the one here, purportedly entered upon invalid service of process, more than 30 days after that judgment was entered. *Sarkissian v. Chicago Board of Education*, 201 Ill. 2d 95, 101 (2002). The petition must be supported by affidavit or other appropriate showing as to matters not of record.

¶ 44    "[A] dispute over personal jurisdiction" raised within a section 2-1401 petition, normally "presents a question of law, and rulings as to questions of law are considered *de novo*." *Jayko v. Fraczek*, 2012 IL App (1st) 103665, ¶ 3; *Abbington Trace Condominium Ass'n v. McKeller*, 2016 IL App (2d) 150913, ¶ 10 ("Normally, we review *de novo* whether the trial court obtained jurisdiction."). However, if any material evidentiary conflicts exist, and the circuit court conducts an evidentiary hearing to resolve those disputes, we review the circuit court's factual findings for manifest weight of the evidence. *Abbington Trace*, 2016 IL App (2d) 150913, ¶ 10; see also *Royal Extrusions Ltd. v. Continental Window & Glass Corp.*, 349 Ill. App. 3d 642, 645 (2004); *TCA International, Inc. v. B&B Custom Auto Inc.*, 299 Ill. App. 3d 522, 531-32 (1998) ("if there are disputes regarding issues of fact that 'determine whether the court has personal jurisdiction, the trial court must hear the testimony, evaluate its credibility, and resolve any material conflicts in the evidence' " (quoting *Stein v. Rio Parismina Lodge*, 296 Ill. App. 3d 520, 523 (1998))); *Ruprecht Co. v. Sysco Food Services of Seattle, Inc.*, 309 Ill. App. 3d 113, 119 (1999); *Gaidar v. Tippecanoe Distribution Service, Inc.*, 299 Ill. App. 3d 1034, 1039-40 (1998). Under this standard, the circuit court's determination may be reversed "only when the opposite conclusion is clearly

evident or where the factual findings upon which it is based are unreasonable, arbitrary, or not based on the evidence." *1350 Lake Shore Associates v. Randall*, 401 Ill. App. 3d 96, 102 (2010); see also *Nibco, Inc. v. Johnson*, 98 Ill. 2d 166, 174 (1983).

¶ 45     Accordingly, in the present case, we review the circuit court's decision to grant the respondent's motion to quash based on the holding in *Sterne de novo*. However, we review the court's factual findings made after the evidentiary hearing under a manifest weight of the evidence standard.

¶ 46     Section 2-203(a)(2) of the Code of Civil Procedure, which governs substitute, or abode service of process, provides in relevant part:

"(a) Except as otherwise expressly provided, service of summons upon an individual defendant shall be made *** (2) by leaving a copy at the defendant's usual place of abode, with some person of the family or a person residing there, of the age of 13 years or upwards, and informing that person of the contents of the summons, provided the officer or other person making service shall also send a copy of the summons in a sealed envelope with postage fully prepaid, addressed to the defendant at his or her usual place of abode ***. The certificate of the officer or affidavit of the person that he or she has sent the copy in pursuance of this Section is evidence that he or she has done so." 735 ILCS 5/2-203(a)(2) (West 2020).

¶ 47     The ultimate consideration in determining the propriety of substitute service is whether service at the chosen address was "reasonably likely to provide the defendant with actual notice of the proceedings." *United Bank of Loves Park v. Dohm*, 115 Ill. App. 3d 286, 289 (1983); see also *Central Mortgage Co. v. Kamarauli*, 2012 IL App (1st) 112353, ¶ 20 (" 'Such statutes presuppose that such a relation of confidence exists between the person with whom the copy is left and

defendant that notice will reach defendant; they assume that such person will deliver the process or copy to defendant or in some way give him notice thereof.' " (Internal quotation marks omitted.) (quoting *Anchor Finance Corp. v. Miller*, 8 Ill. App. 2d 326, 330 (1956))).

¶ 48    With substitute service, the process server's certificate must demonstrate strict compliance with every requirement of the statute as the presumption of validity that attaches to a return for personal service does not apply. *Thill*, 113 Ill. 2d at 309. To determine whether substitute service was proper, the reviewing court must consider the whole record, including the pleadings and the certificate. *Id.* at 313. The process server's certificate is *prima facie* evidence of service that cannot be set aside based upon an uncorroborated affidavit from the person served. *Nibco*, 98 Ill. 2d at 172. The certificate can only be set aside by clear and satisfactory evidence. *Id.* However, this rule applies only to matters that are within the knowledge of the process server, such as the fact that service was made, his actions involved in doing so, where service was made, and who accepted the service. *Id.*

¶ 49    Where, on the other hand, the information would not have been within the process server's knowledge (*i.e.*, the defendant's usual place of abode), the evidence can be attacked by an uncorroborated affidavit of the defendant. *Four Lakes Management & Development Co. v. Brown*, 129 Ill. App. 3d 680, 684 (1984). If the plaintiff fails to introduce evidence to rebut the defendant's affidavit and create an issue of fact, the assertions in the defendant's affidavit must be taken as true. See *Sterne*, 145 Ill. App. 3d at 274-76.

¶ 50    In the present case, the parties disagree as to what type of evidence can rebut the defendant's affidavit. The respondent argues that under the holding in *Sterne*, only a counteraffidavit or the testimony of the process server can be sufficient. In making this argument, the respondent relies on a single sentence in *Sterne*, which states that "where [the] return is

challenged by affidavit and there a are no counteraffidavits, the return itself is not even evidence, and, absent testimony by the deputy, the affidavits must be taken as true and the purported service of summons quashed." (Internal quotation marks omitted.) *Id.* at 274.

¶ 51    The Department, on the other hand, asserts that this sentence is taken out of context and that, under a proper reading of *Sterne*, documentary evidence (that does not solely include the certificate of service) and cross-examination of the defendant's witnesses may be sufficient to undermine the defendant's affidavit. For the following reasons, we agree with the Department.

¶ 52    In *Sterne*, the plaintiff brought a breach of contract action against the defendant and summons was served by way of substitute service. *Id.* at 269. The certificate stated that service was made at an address in Bartlett, which was the defendant's usual place of abode, and that the summons was given to an individual who identified himself as the defendant's roommate. *Id.* at 269-70. After the defendant failed to appear in court or file an answer to the breach of contract claim, a default judgment was entered against him. *Id.* at 270. The defendant filed a motion to quash service and vacate the judgment. *Id.* In support, the defendant attached his own affidavit stating that his usual place of abode was in Chicago, and not Bartlett. *Id.* According to the affidavit, the defendant rented the Bartlett property and the person served was not his roommate, but rather his tenant. *Id.*

¶ 53    The trial court held an evidentiary hearing at which the respondent testified on his own behalf. *Id.* The respondent also offered the testimony of his tenant and his mother. *Id.* at 270-71. The plaintiff filed no counteraffidavits, and the deputy who made the return did not testify at trial. *Id.* at 274. Instead, the plaintiff cross-examined the defendant's witnesses. *Id.* at 271-72. At the close of the evidence, the trial court found that the defendant's usual place of abode was at the

Bartlett address and that service of the summons was proper. *Id.* at 272.

¶ 54     On appeal, we affirmed the decision of the trial court. *Id.* at 275-76. In doing so, we held that even though it was true that the plaintiff offered no counteraffidavit or witness testimony by the deputy, at the evidentiary hearing, he did not solely rely on the certificate of service but rather rebutted the defendant's affidavit with documentary evidence and the cross-examination of the defendant's witnesses. *Id.* at 276. We noted that this cross-examination elicited several relevant admissions from the defendant, including, among other things, that (1) he certified to the IRS that his residential address was in Bartlett, (2) he informed his employer of a change of address to a post office box within four miles of Bartlett, and (3) his checking account and several of his utility bills listed Bartlett as his address. *Id.* Accordingly, we held that it was the responsibility of the trial court to weigh the conflicting evidence and make a factual finding as to the defendant's usual place of abode. *Id.* (citing *Nibco*, 98 Ill. 2d at 173). Based on the cross-examination and the documentary evidence, we held that substitute service was proper and affirmed the trial court's denial of the motion to quash. *Id.*

¶ 55     Therefore, contrary to the respondent's position, rather than requiring that the trial court take the defendant's affidavit as true if no counteraffidavits are filed, *Sterne* stands for the proposition that documents and cross-examination of the defendant's witnesses are competent rebuttal evidence to be weighed by the circuit court in determining whether to quash service. See also *Miura v. Famous Cab Co.*, 107 Ill. App. 3d 803, 807-08 (1982) (affirming the denial of the defendant's section 2-1401 petition based on documentary evidence and inconsistencies in the witnesses' testimony and affidavits); see also *Dohm*, 115 Ill. App. 3d at 288-91 (relying solely on the defendant's own testimony to affirm the denial of his motion to quash).

¶ 56     In the present case, the circuit court held that for all intents and purposes the evidence at

the hearing established that 13634 South Lowe Avenue was the respondent's usual place of abode, but that it was restricted by the holding in *Sterne*, which it erroneously believed compelled it to grant the motion to quash service because the Department did not file any counteraffidavits and did not offer the testimony of the process server. To the contrary, just as is *Sterne*, the lack of counteraffidavits and the process server's testimony were not dispositive because the Department relied on documentary evidence and its cross-examination of the respondent and Rayford to discredit the respondent's assertions regarding his usual place of abode. Accordingly, the circuit court's hands were not bound by *Sterne*.

¶ 57 On appeal, the respondent does not attempt to address the contradiction between the circuit court's reading of *Sterne* and that decision's ultimate holding that documentary evidence and the cross-examination of the defendant's witnesses was sufficient to rebut the defendant's affidavit. Instead, he cites several Illinois cases that stand for the proposition that in the absence of counteraffidavits, a defendant's affidavit must be taken as true. See, *e.g.*, *LaMotte v. Constantine*, 92 Ill. App. 3d 216, 217 (1980); *First Federal Savings & Loan Ass'n of Chicago v. Brown*, 74 Ill. App. 3d 901, 906 (1979); *Harris v. American Legion John T. Shelton Post No. 838*, 12 Ill. App. 3d 235, 237 (1973); *Chiaro v. Lemberis*, 28 Ill. App. 2d 164, 172 (1960). However, the procedural posture of these cases is different because the court's decisions there were made prior to any evidentiary hearing so that none of the defendants' witnesses could be or were subjected to cross-examination.

¶ 58 The respondent's reliance on *Prudential Property & Casualty Insurance Co. v. Dickerson*, 202 Ill. App. 3d 180 (1990), is similarly misplaced. In that case, the defendant's motion to quash was initially granted based on his affidavit and testimony. *Id.* at 183. The plaintiff then filed a motion to reconsider, providing as " 'new evidence' " the defendant's job application, purportedly

showing that the defendant lied about his usual place of abode. *Id.* Based on that new evidence, the circuit court granted the motion to reconsider. *Id.* at 184. On appeal, this court reversed. *Id.* at 186. We held that the circuit court's original order granting the motion to quash was proper because the plaintiff submitted no evidence contrary to the defendant's affidavit. *Id.* We further held that the court's subsequent order granting the motion to reconsider was an abuse of discretion because the job application served only to impeach the defendant's credibility, which is insufficient as a matter of law to grant a motion to reconsider and was uncorroborated by any counteraffidavit or testimony from the process server. *Id.* at 186-87.

¶ 59    The present case is procedurally different. Here, at issue is the circuit court's original determination based on the facts presented at the evidentiary hearing—not whether later-discovered evidence was sufficient to overturn that determination. Accordingly, the standard of review is different. Moreover, unlike in *Dickerson*, in the present case the circuit court's factual findings and credibility determinations were all in the Department's favor.

¶ 60    Likewise, we similarly reject the respondent's reliance on *Nibco* and *Abbington Trace* for the proposition that in the absence of a counteraffidavit, a defendant's affidavit can be rebutted only when the process server testifies at the evidentiary hearing. In both of those cases, the defendants relied solely on their affidavits, and the only testimony presented at the evidentiary hearing was the process server's testimony. See *Nibco*, 98 Ill. 2d at 172-75; *Abbington Trace*, 2016 IL App (2d) 150913, ¶¶ 13-15. Based on *that* evidence, the circuit court in each case found that the address of service was the defendants' usual place of abode and concluded that substitute service was improper. See *Nibco*, 98 Ill. 2d at 172-75; *Abbington Trace*, 2016 IL App (2d) 150913, ¶¶ 13-15. Moreover, in both cases, the appellate court deferred to the circuit court's credibility and factual findings because "the weight to be given to the assertions in the affidavit and to the

testimony of the process servicer were peculiarly within the province of the trial court." *Abbington Trace*, 2016 IL App (2d) 150913, ¶ 14 (analogizing to *Nibco*, 98 Ill. 2d at 174-75). Accordingly, rather than support the respondent's proposition, *Nibco* and *Abbington Trace* show that the circuit court should have rested its decision on its factual findings and not on its misreading of *Sterne*.

¶ 61    Because we conclude that under *Sterne* the circuit court was not required to grant the motion to quash based on the Department's failure to offer a counteraffidavit or the testimony of the process server, we turn to the evidence presented at the hearing to determine whether the circuit court's findings regarding the respondent's usual place of abode were against the manifest weight of the evidence.

¶ 62    For the following reasons, and contrary to the respondent's position, we find that the court's determination that 13634 South Lowe Avenue in Riverdale was his usual place of abode was not against the manifest weight of the evidence.

¶ 63    It is well established that the circuit court, as the trier of fact, has the responsibility to determine the credibility of witnesses, the weight to be given their testimony, and the reasonable inferences to be drawn therefrom. *Bazydlo v. Volant*, 164 Ill. 2d 207, 214-15 (1995). The circuit court is in a superior position to assess witness credibility because it may observe the witnesses' demeanor and consider any conflicts or inconsistencies in their testimony. *Id.* We therefore defer to the circuit court in such matters and may not substitute our judgment for its findings. *Best v. Best*, 223 Ill. 2d 342, 350-51 (2006).

¶ 64    In the present case, the circuit court found both Rayford and the respondent were not credible witnesses. The court noted that while the respondent repeatedly changed his testimony regarding how often he stayed at the Riverdale address, he unequivocally testified that in 2002 and 2003, 13634 South Lowe Avenue was the most likely location to reach him and that he received

all his important documents there. The court found unbelievable the respondent's testimony that while "this was his most reliable way to receive mail," "suddenly when court documents arrived, he did not receive them." The court also did not credit the respondent's claims not to have noticed the garnishments in his paychecks and to have given up trying to learn from the IRS why his $4000 tax return was seized. The court held that these explanations were unreasonable given the amount of money that was involved.

¶ 65    The court also gave little credence to Rayford's testimony that the respondent never lived in Riverdale. Rayford admitted that the respondent did not tell her and that she did not know where he stayed when he sporadically left her house throughout 2002 and 2003. In addition, the court found that Rayford's testimony was undermined by that of the respondent. As the court explained:

> "[The respondent] seems not to have told his wife about the number of children he has
> fathered. [He] testified that he had 24 children. *** When Ms. Rayford was questioned
> about the number of kids he fathered outside the marriage, she indicated she though there
> were two or three."

The court therefore held that it was "clear that [the respondent] was not forthcoming to his wife" and that she lacked actual knowledge of his whereabouts and activities.

¶ 66    The court likewise gave little weight to Perez's affidavit. The court noted that Perez did not testify at the hearing and that her affidavit provided only nondefinitive statements, such as that she did not recall receiving the summons and that she was unlikely to have been home at the time of service. The court held that this was not strong evidence because "on any given day, an individual's schedule can change."

¶ 67    After considering the unbelievable testimony offered by the respondent's witnesses together with the documentary evidence offered by both parties, the circuit court found that given

the respondent's transient lifestyle, his numerous arrests and short jail stays, and his repeated statements that the Riverdale address was the best place for him to receive important documents, 13634 South Lowe Avenue, in Riverdale was his usual place of abode. We find that this determination is based on the evidence and is neither arbitrary nor unreasonable. Accordingly, we hold that the court's factual findings are not against the manifest weight of the evidence. See *Randall*, 401 Ill. App. 3d at 102; *Abbington Trace*, 2016 IL App (2d) 150913, ¶ 10 (a finding is against the manifest weight of the evidence only when "unreasonable, arbitrary, or not based on the evidence" (internal quotation marks omitted)).

¶ 68    The respondent nonetheless contends that we should reverse the circuit court's finding that his usual place of abode was in Riverdale because it became Cook County jail upon his incarceration. In support, the respondent points out that the evidence at the hearing irrefutably established that at the time of service, he was in Cook County jail, so that substitute service needed to be made there. For the following reasons, we disagree.

¶ 69    Illinois courts have not yet determined whether incarceration alone changes a party's usual place of abode. See *Primus Financial Services v. Walters*, 2015 IL App (1st) 151054, ¶ 19. Currently, there is a split in authority among several federal courts that have addressed this issue. See, *e.g.*, *Shurman v. Atlantic Mortgage & Investment Corp.*, 795 So. 2d 952 (Fla. 2001) (*per curiam*) (holding that an inmate's usual place of abode for service of process was prison, not the home where the inmate had lived with his wife); *Fidelity & Deposit Co. of Maryland v. Abagnale*, 234 A.2d 511, 519 (N.J. Super. Ct. Law Div. 1967) (holding that the defendant could not be reached by substitute service in New Jersey when he was incarcerated in Pennsylvania, since "one's 'dwelling house or usual place of abode' is limited in its meaning to the place where one is 'actually living' at the time when service is made"). But see, *e.g.*, *Blue Cross & Blue Shield*

*of Michigan v. Chang*, 109 F.R.D. 669, 670 (E.D. Mich. 1986) (holding that a family residence continues to be the place of abode of an individual who has been incarcerated because the relevant consideration is whether the individual intends to return to the place of service); *Bull v. Kistner*, 135 N.W.2d 545, 548 (Iowa 1965) (holding that incarceration does not change the residence of a married individual whose family remains in the home he occupied at the time of his imprisonment).

¶ 70    Without offering any explanation, the respondent simply asks us to adopt the authority of those cases that hold that incarceration alone changes a person's abode. In addition, he asserts that because the definition of "abode" in Illinois is "a place with which one has significant and persisting contacts, *i.e.*, a place that a person considers his home and where he intends to live on a *more-than-transient basis*" (emphasis added) (*People v. Price*, 375 Ill. App. 3d 684, 688 (2007)), his 2003 incarceration, even though "involuntary" necessarily made Cook County jail his "home."

¶ 71    The respondent, however, fails to acknowledge that in Illinois there is "[n]o hard and fast definition of 'usual place of abode' " and that "each case must turn on its particular facts." *Dohm*, 115 Ill. App. 3d at 289. As the law currently stands, the underlying consideration with substitute service is whether the chosen location "is reasonably likely to provide the defendant with actual notice of the proceedings." *In re J.B.*, 2018 IL App (1st) 173096, ¶ 38. That consideration is a question of fact reserved for the trial court, which we must defer to unless it is against the manifest weight of the evidence. *Dohm*, 115 Ill. App. 3d at 289.

¶ 72    Here the circuit court found that because the respondent acknowledged that he was frequently in and out of jail and because he stated that the best place for him to receive important mail was in Riverdale, service in jail would not have been the most "reasonably likely" place to provide him with actual notice of the proceedings.

¶ 73    We find nothing manifestly erroneous in this finding. Accordingly, without a fully

developed argument from the respondent explaining why we should follow the authority of those cases that hold incarceration alone changes a person's place of abode, we are disinclined to hold that Cook County jail became the respondent's home and that substitute service necessarily should have been made there.

¶ 74    For this same reason, we also reject the respondent's alternative argument that we should affirm the grant of his motion to quash because regardless of the location of his usual place of abode, due process required that instead of substitute service, he be personally served in jail. In this respect, the respondent asserts that a minimal amount of due diligence by the sherriff would have disclosed that he was being held in Cook County jail and that therefore personal service there could easily have been accomplished.

¶ 75    In making this argument, however, the respondent misguidedly relies on decisions discussing service by posting, which requires the additional step of "due" or "diligent inquiry" into the defendant's whereabouts. See, *e.g.*, *Equity Residential Properties Management Corp. v. Nasolo*, 364 Ill. App. 3d 26, 31-32 (2006). At issue, here, however is substitute service, which has no such requirement.

¶ 76    What is more, contrary to the respondents' position, due process required only that he "receive sufficient notice reasonably calculated to apprise him of the action and afford him the opportunity to be heard." *Najas Cortés v. Orion Securities, Inc.*, 362 Ill. App. 3d 1043, 1048-49 (2005). For substitute service, that was the address most "reasonably likely to provide the defendant with actual notice of the proceedings." *Dohm*, 115 Ill. App. 3d at 289. As already noted above, the circuit court found that "[t]he most reasonably likely place to receive adequate notice" for the respondent "would have been *** at 13634 South Lowe [Avenue]." Since we find nothing manifestly erroneous in that finding, we reject the respondent's contention that due process

- 23 -

required that he be personally served in prison.

¶ 77                                    III. CONCLUSION

¶ 78    For all the aforementioned reasons, we find that the circuit court misinterpreted *Sterne* and improperly held that in the absence of any counteraffidavits from the Department, or the testimony of the process server, was required to grant the respondent's motion to quash. Absent this mistake of law, the circuit court's factual finding that 13634 South Lowe Avenue was the respondent's usual place of abode was not against the manifest weight of the evidence. Accordingly, we reverse the circuit court's order granting the motion to quash service and remand the matter so that the circuit court can issue an order consistent with these findings.

¶ 79    Reversed and remanded.

No. 1-21-0409

| | |
|---|---|
| **Cite as:** | *Department of Healthcare & Family Services ex rel. Sanders v. Edwards*, 2022 IL App (1st) 210409 |
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 03-D-90464; the Hon. Gregory E. Ahern Jr., Judge, presiding. |
| **Attorneys for Appellant:** | Kwame Raoul, Attorney General, of Chicago (Jane Elinor Notz, Solicitor General, and Benjamin F. Jacobson, Assistant Attorney General, of counsel), for appellant. |
| **Attorneys for Appellee:** | Richard A. Cederoth, Leslie E. Kuhn-Thayer, Jackson T. Garvey, and Esther A. Ju, of Sidley Austin LLP, of Chicago, for appellee. |