SIXTH DIVISION
February 16, 2007

No. 1-07-0309

DAVID E. NEELY, the Candidate for      )    Appeal from the
Alderman of the 20th Ward in the City  )    Circuit Court of
of Chicago,                            )    Cook County
                                       )
          Petitioner-Appellant,        )
                                       )
     v.                                )
                                       )
THE BOARD OF ELECTION COMMISSIONERS FOR )
THE CITY OF CHICAGO; LANGDON NEAL and  )
RICHARD COWEN, as Members of the Board )
of Election Commissioners for the City )
of Chicago; IRIS L. HEARD and JERMAINE )
SHEPPARD, as Objectors.                )    Honorable
                                       )    Susan Fox Gillis,
          Respondents-Appellees.       )    Judge Presiding


     JUSTICE McNULTY delivered the opinion of the court:

     David Neely, Ph. D., attorney at law, filed nomination

papers by which he sought election to the office of alderman from

Chicago's 20th Ward in the February 2007 election.  The Chicago

Board of Election Commissioners sustained an objection to the

nomination papers based on Neely's vote in the 8th Ward less than

a year before the 2007 election.  The trial court, on

administrative review, upheld the Board's decision.  Neely now

appeals.

     We too affirm the Board's decision, finding that Neely's

deliberate assertion of residence in the 8th Ward in March 2006

proves that he has not resided in the 20th Ward, for purposes of

serving as a representative of that ward, for the requisite year

1-07-0309

before the February 2007 election.


BACKGROUND

On March 21, 2006, Neely signed an application for a ballot he used when he voted in Chicago's 8th Ward that day. The application listed his address as 8401 South Luella Avenue, which lies in the 8th Ward. Above the signature the application said, "I hereby certify that I am registered from the address above and am qualified to vote."

In September 2006 Neely changed his voting address to 5619 South Wabash, which lies in the 20th Ward. In December 2006 Neely filed a petition to have his name included on the ballot for election as an alderman of the 20th Ward in the general election of February 27, 2007.

Jermaine Sheppard and Iris Heard objected that Neely would not have resided in the ward for the required one year prior to the election. At a hearing on the motion, objectors relied mostly on the application for ballot Neely signed in March 2006. Neely presented utility bills and insurance bills showing him as the addressee for bills for 5619 South Wabash since 1996. Appraisals of the property, done in 2004 and April 2006, listed Neely as owner and occupant.

A financial consultant who worked with Neely since 2004

-2-

testified that he went to the property in 2005 and 2006 and he found "that the residency of David E. Neely was continuous." The consultant added that he visited the property more than 20 times since March 2006, and he could "personally attest" that Neely lived at the property. The consultant explained that he knew this from "coming in the morning when [Neely] wakes up and he comes to the door."

Neely testified that he lived at 5619 South Wabash since 1996. He always used his parents' address on Luella as his permanent mailing address and he maintained his voting registration at that address although he did not live there.

The hearing examiner found that Neely's evidence proved he owned the Wabash home, but he did not prove residence. The officer discounted the consultant's testimony because of the consultant's financial interest in the "ongoing business relationship for at least nine years." Thus, the examiner held that Neely did not effectively refute the objector's evidence based on the March 2006 ballot application.

Neely asked the Board to review the examiner's decision. Before the hearing Neely sought to introduce affidavits signed by eight persons who lived in the 20th Ward. In the affidavits the affiants swore that Neely had lived in the Wabash home for more than a year. At the hearing Neely expanded on his reasons for

1-07-0309

using his mother's address as his voting address:

"I have been practicing law for 25 years. I handle criminal cases and civil rights cases. I handle high profile cases. I have always wanted to maintain some sense of privacy. And by voting at my mother's address, I did not disclose my actual address. ***

       ***

       *** I have maintained a law practice, a home business, at 5619 South Wabash for over ten years. I live there. I raise my dogs there. I raise my family there."

Members of the Board recognized that the examiner made some factual errors, particularly in finding that the consultant had a business relationship of nine years with Neely. The Board never explicitly ruled on Neely's motion to introduce the eight affidavits from neighbors into the record.

One member said he found all of Neely's evidence credible, but the Board needed to rely on the voting registration from March 2006. He said:

"[W]hat would happen if we decided that a person can be registered anywhere they want to be but they can establish their own particular residency at another location for purposes of running for the ballot? ***

-4-

1-07-0309

                            * * *

It would have to be an extraordinary set of
circumstances for you to overcome that inconsistency
between where you say you reside and where you have
registered with the Board."

Another Board member said he found Neely and his financial consultant incredible, and the weight of the evidence supported the examiner's central findings. But that member also said, "I do not believe that we should ever have a system where somebody says I live at this address in this ward and I am going to vote for however long I can from an address in another ward." The Board adopted the hearing examiner's findings and recommendations, holding that any factual errors in the findings had no material effect on the result. The trial court affirmed the Board on administrative review.

                          ANALYSIS

We review the Board's decision rather than the circuit court's judgment. Thigpen v. Retirement Board of Firemen's Annuity & Benefit Fund, 317 Ill. App. 3d 1010, 1017 (2000). We will disturb the board's findings of fact only if they contravene the manifest weight of the evidence. If the record sufficiently supports the findings of fact, we then apply the law to those facts. Oregon Community Unit School District No. 220 v. Property

Tax Appeal Board, 285 Ill. App. 3d 170, 176 (1996).  While we give substantial weight to the agency's interpretation of law, we must independently analyze the law in applying it to the facts. Oregon, 285 Ill. App. 3d at 175-76.

The Board adopted the hearing examiner's findings and decision.  The findings include errors that the Board recognized but found immaterial.  When we find such errors in factual findings, we must "first determine whether the factual findings independent of the error provide a sufficient basis for the agency's decision. [Citations.]  If the facts provide such a basis, we will affirm the decision. But if the decision lacks adequate support without the manifestly erroneous finding, we must reverse."  Johnson v. Human Rights Comm'n, 318 Ill. App. 3d 582, 587 (2000).

The Board relied primarily on one factual finding, and Neely does not dispute that finding.  In March 2006, when Neely signed an application for an 8th Ward ballot, he certified that he was "qualified to vote" for the 8th Ward candidates on the ballot. The Election Code provides:

"No person shall be entitled to be registered in and from any precinct unless such person shall by the date of the election next following have resided in the State and within the precinct 30 days ***."  10 ILCS

1-07-0309

5/5-2 (West 2004).

Thus, Neely, in March 2006, certified that he had resided within the precinct in the 8th Ward for at least 30 days prior to the March election. The Revised Cities and Villages Act of 1941 establishes that "No member may be elected or appointed to the city council after the effective date of this amendatory Act of the 93rd General Assembly unless he or she has resided in the ward he or she seeks to represent at least one year next preceding the date of the election or appointment." 65 ILCS 20/21-14 (West 2004).

Neely claims that his evidence of actual residence in the 20th Ward rebuts the certification he made in March 2006, and many voters register with an address other than the address of their actual residences. We have found no Illinois case, and the parties have cited us none, in which a candidate sought to renounce a public record he created of his residence as part of an effort to establish eligibility for public office. However, we find some guidance in cases from other jurisdictions.

In McClelland v. Sharp, 430 S.W.2d 518 (Tex. Civ. App. 1968), the petitioner sought a writ of *mandamus* directing the respondent to put his name on the ballot as a candidate for state representative from the 24th legislative district for an election to take place on November 5, 1968. State law required residence

-7-

in the district for one year as a qualification for the office. Twice within the year preceding the election the petitioner voted in the 22nd district, and he also made himself a candidate for an office in the 22nd district in a special election held on November 11, 1967.

The petitioner sought to introduce evidence that he actually moved into the 24th district more than a year before the 1968 election, but shortly after he filed for candidacy for an office in the 22nd district. He did not formally withdraw his candidacy for that office only because he knew he had little chance of winning. He saw no problem with continuing to vote in the 22nd district because he continued to maintain a part-time residence in that district after he moved his primary home to the 24th district.

The court denied the writ, holding that the respondent properly refused to put the petitioner's name on the ballot for the 24th district. The court explained:

"[B]y voting in that special election [in the 22nd district, in November 1967], the relator represented himself to be a resident of that district on that date. His conduct, which implies that representation, is a matter of public record. The same can be said of his votes in the November 18, 1967, city bond election ***.

1-07-0309

* * *

*** [W]here, as here, the facts reflected by public records establish a disqualification of the proposed candidate, the respondents were neither required to ignore those facts nor permitted to go outside the record inquiring of other facts in exercising their implied authority. Particularly is this true where the public records showing the disqualification of the relator are based on his own actual or implied representations as to his residence at the time in question." McClelland, 430 S.W.2d at 520-22.

Similarly, in People v. Platt, 117 N.Y. 159, 22 N.E. 937 (1889), the defendant accepted appointment to an office as commissioner, when the office required residence in New York City. The plaintiff sued to have the defendant removed from office on grounds that he did not reside in the city. The defendant presented evidence that he maintained residences in the city and outside the city, in Tioga County. Platt, 117 N.Y. at 165, 22 N.E. at 937. He continued to vote in Tioga County even after his appointment as a commissioner. The court explained:

"His right to vote was challenged on the ground that he was not a resident of the village, and he took the

-9-

general oath and voted under the challenge. He thus

declared, under oath, that he had resided in the county

of Tioga for four months, and in the village for thirty

days, prior to that election.   ***

    ***

The defendant offers his vote in Tioga county

because he is a resident of that county, and of the

election district where it is offered; it is received

under the provision of law, that a person so situated

shall be entitled to the privilege. And his absence

from that county, however long, so that it is

temporary, and not in abandonment of his home, will not

deprive him of his residence, though his absence extend

through a series of years. Nor can his actual presence

during that time in another district entitle him to the

enjoyment of another franchise for which only a

resident of that district is, by law, qualified."

Platt, 117 N.Y. at 166-68, 22 N.E. at 938.

McClelland and Platt comport with the reasoning of other

courts concerning the significance of voting.  The Virginia

Supreme Court said:

"[P]articular significance should be attached to

the repeated exercise of the right to vote, because

1-07-0309

this right depends upon citizenship and domicile ***. *** [S]uch act is a distinct, unequivocal, and public assertion by the voter of his legal domicile."

Cooper's Administrator v. Commonwealth, 121 Va. 338, 349, 93 S.E. 680, 683 (1917).

And Wisconsin's Supreme Court held:

"[W]e cannot conceive of any circumstance of more controlling weight, as bearing upon the question as to what state a man has taken up a permanent residence in, than the act of voting. This act is so important and deliberate that it should have decisive preponderance upon the question whether a [litigant] believes that he is a resident of a particular state. For the defendant must be presumed to know that he had no right to vote in Iowa unless he was a resident of that state. He exercised the elective franchise there because he considered himself at the time as a resident of that state, and as having the right to vote where he did."

Wolf v. McGavock, 23 Wis. 516, 518-19 (1868).

Neely protests that the Board's decision here engrafts onto the Election Code a requirement that the candidate have registered as a voter in the ward from which he seeks election at least one year prior to the election. Neely misinterprets the

-11-

1-07-0309

Board's ruling. The Board did not require any voting registration at all. But because Neely had registered, the Board looked to the public record of his registration, and particularly to the exercise of the power to vote in the 8th Ward in March 2006, as a deliberate assertion of residence in that ward. Neely did not present any evidence that the vote resulted from inadvertent error or misunderstanding. See Dixon v. Hughes, 587 So. 2d 679 (La. 1991); In re Jackson, 14 S.W.3d 843 (Tex. App. 2000). He explained that he intentionally misrepresented his residence to the Board in 2006 to keep his actual residence secret. We agree with the Board that this explanation cannot justify inclusion of his name on a ballot for office representing the 20th Ward.

We agree with the Board that the affidavits from eight neighbors have no bearing on the case, and the hearing examiner included only immaterial errors in his recitation of facts. Because of Neely's deliberate assertion of residency in the 8th Ward on March 21, 2006, the Board properly found Neely unqualified for election from the 20th Ward for the February 2007 election. Accordingly, we affirm the Board's decision.

Affirmed.

FITZGERALD SMITH, P.J., and O'MALLEY, J., concur.