2025 IL App (1st) 241353-U
No. 1-24-1353

SIXTH DIVISION
December 31, 2025

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| In re Parentage and Support | ) | Appeal from the Circuit Court |
| | ) | of Cook County, Illinois |
| ILLINOIS DEPARTMENT OF HEALTHCARE | ) | |
| & FAMILY SERVICES ex rel. LATRICE | ) | |
| BILLUPS, | ) | No. 2006D650548 |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | The Honorable |
| v. | ) | Federick H. Bates, |
| | ) | Judge Presiding. |
| JUSTIN GLASS SR, | ) | |
| | ) | |
| Respondent-Appellant. | ) | |

_____

JUSTICE PUCINSKI delivered the judgment of the court.
Presiding Justice C.A. Walker and Justice Gamrath concurred in the judgment.

**ORDER**

¶ 1    *Held:*  The circuit court did not err in its denial of the respondent's section 2-1401 petition for lack of personal jurisdiction and finding that substitute service was properly made at the respondent's "usual place of abode."

¶ 2    This matter comes before this court on appeal pursuant to Illinois Supreme Court Rule 304(b)(3), stemming from a parentage and child support action pursuant to the Illinois Parentage Act of 1984, 750 ILCS 45/1 *et seq.* (repealed by Pub. Act 99-85 (eff. Jan. 1, 2016)) and 305 ILCS 5/10-10, filed by petitioner-appellee, Illinois Department of Healthcare and Family Services

(DHFS), on behalf of Latrice Billups (Billups) against respondent-appellant, Justin Glass Sr. After respondent failed to appear or respond to the petition, the circuit court granted the petition and entered default orders for parentage and child support against him. Seventeen years later, respondent filed a section 2-1401 petition seeking to declare the parentage and support orders void ab initio. Following briefing and oral argument, the circuit court denied respondent's petition. Respondent now appeals. For the following reasons, we affirm.

¶ 3                                I. BACKGROUND

¶ 4        On June 23, 2006, DHFS and Billups filed a Petition to Determine the Existence of the Father and Child Relationship against respondent for Billups's then five-year-old son ("Parentage Petition"). The summons indicated that the Parentage Petition was scheduled for hearing on September 1, 2006.

¶ 5        The Cook County Sheriff's Office certified substitute service of process on respondent. According to that certificate, on August 8, 2006, a copy of the Parentage Petition and summons was left with respondent's grandmother Annie Glass at her residence located at 7149 S. Sangamon, Chicago, IL 60621 ("Sangamon Street Address").

¶ 6        Respondent failed to file an appearance, answer the complaint or appear in court and the circuit court entered a Default Order of Parentage and a Uniform Order of Support on September 1, 2006 (jointly referred to as "Default Orders"). The Default Orders adjudicated him as the minor's natural father and required respondent to pay $335/month in child support.

¶ 7        On October 17, 2006, respondent filed a pro se appearance, an "Application and Affidavit to Sue or Defend as an Indigent Person," motion which requested a paternity test based upon his claim that Billups told him there was "possibly another father candidate," and a notice of motion. On all four documents, respondent identified his address as the Sangamon Street Address.

Ultimately, respondent failed to appear on November 21, 2006, to present the motion requesting a paternity test and the circuit court struck the motion.

¶ 8                                                  A. 2-1401 Petition

¶ 9            Then, on October 6, 2023, seventeen years after the Default Orders were entered, respondent filed a pro se "Petition to Declare Default Order of Parentage and Default Uniform Order for Support Entered on September 1, 2006 as Void Ab Initio" pursuant to section 2-1401 of the Illinois Code of Civil Procedure, 735 ILCS 5/2-1401 ("2-1401 Petition"). In the 2-1401 Petition, he acknowledged that Annie was his grandmother and that she resided at the Sangamon Street Address but argued that the Sangamon Street Address was not "his usual place of abode" at the time of service. Instead, he claimed that he had two places of residence at the time of service – 11439 S. Normal Avenue, Chicago, IL ("Normal Avenue Address") and 6546 S. King Drive, Chicago, IL ("King Drive Address"). Thus, as respondent argued, the court had no personal jurisdiction over him at the time that it entered the Default Orders for parentage and child support. In support of his claims, respondent attached affidavits from himself, his cousin Shartina Harris, and his former-fiancée Lusenda Scott, and cited *Prudential Property and Casualty Insurance Company v. Dickerson*, 202 Ill. App. 3d 180 (1st Dist. 1990), for the proposition that "[w]here a party challenging the substitute service attacks the sheriff's return with affidavits, and no counter-affidavits are filed" service is defeated.

¶ 10           In his affidavit, he stated "while [his] grandmother's address ([the Sangamon Street Address]) was the address [he] commonly used," he did not reside with his grandmother and instead had two residences in August of 2006: the Normal Avenue Address with his aunt and cousin Shartina, and the King Drive Address with his then-fiancée Lusenda. He averred that he was on the Section 8 housing lease for the Normal Avenue Address during this time. Respondent

claimed that "[w]hen I was not staying at [the Normal Avenue Address] with my Aunt and cousin, I was residing with my then fiancée Lusenda *** at [the King Drive Address]" as Lusenda had given birth to their child the month prior, in July of 2006. However, he claimed that he would return to the Normal Avenue Address whenever there was a fight between him and Lusenda. In explaining why he listed the Sangamon Street Address as his address in his appearance and request for a paternity test, respondent claimed that the clerk's office told him to use it and "because of my several arrests in 2006, I did not want the Courts to know my actual address."

¶ 11    In Shartina's affidavit, she averred that on August 8, 2006, she was living at the Normal Avenue Address with her mother and respondent and that all three of them were listed on a housing voucher as tenants. She stated that, at the time, respondent was living with Lusenda at the King Drive Address "pretty much full time" but that he would return to the Normal Avenue Address when he and Lusenda got into arguments. Shartina further averred that respondent was not living at the Sangamon Street Address with Annie Glass, who she stated was his mother. Shartina acknowledged that respondent was paroled at the Sangamon Street Address in October of 2006.

¶ 12    In Lusenda's affidavit, she averred that respondent was living with her at the King Drive Address in August of 2006 as she had just given birth to their child. She acknowledged that he would return to the Normal Avenue Address when they would get into arguments and that he was listed on the Section 8 housing voucher as a tenant there. She also claimed that he did not reside at the Sangamon Street Address with Annie Glass, who she also stated was his mother, but confirmed that respondent was paroled at the Sangamon Street Address in October of 2006.

¶ 13    In response, DHFS argued that service was properly made through substitute service and that respondent had not met his burden by providing clear and satisfactory evidence to rebut the certificate of service. DHFS argued that the affidavits were self-serving and lacked credibility as

respondent admitted to attempting to intentionally defraud the court. DHFS also noted that respondent repeatedly held himself out to reside at the Sangamon Street Address in his own court filings and the public record repeatedly reflected his address as the Sangamon Street Address. Furthermore, DHFS argued that respondent's reliance on *Dickerson* was misplaced because Illinois courts have rejected the argument that, absent a counter-affidavit, a defendant's affidavit contesting substitute service can only be rebutted when the process server testifies at an evidentiary hearing.

¶ 14 Respondent argued on reply that, while he used the Sangamon Street Address as a stable place to receive mail and notice, his use of the address was not the same as "a usual place of abode." He likened his use of the Sangamon Street Address to a P.O. Box. To support his claim that he was listed as a Section 8 tenant at the Normal Avenue Address, respondent attached a family report from the U.S. Department of Housing and Urban Development (HUD) dated March 21, 2008. The 2008 Family Report listed aunt Slyvia as the program participant, noted that she was admitted into the program on July 27, 2006, and listed respondent as an "other adult living at the residence."

¶ 15 Following a hearing, the circuit court denied the 2-1401 Petition on June 4, 2024, finding that it had personal jurisdiction over respondent because he had been properly served via substitute service. In its memorandum and order, the court reasoned that respondent failed to present clear and convincing satisfactory evidence, or even by a preponderance of the evidence, that the Sangamon Street Address was not his usual place of abode.[1]

---

[1] In a footnote, the court noted that, while its ruling was based upon the merits of the 2-1401 Petition, it could deny the petition on other grounds as well. The court found that because respondent repeatedly held himself out to reside at the Sangamon Street Address, intentionally attempted to obfuscate and mislead the court system, and had actual knowledge of the Default Orders, the 2-1401 Petition could be denied on the bases of equitable estoppel, unclean hands, and latches.

¶ 16      During the hearing, the court heard testimony from respondent concluding that both "his self-serving affidavit and even his limited testimony lacked credibility in their entirety."[2] The court called the admission in his affidavit that he commonly used the Sangamon Street Address because he "did not want the Courts to know his actual address" an intentional defrauding of the court.

¶ 17      Further, the court took judicial notice of (1) respondent's own filings, in this case as well as others, in which he held himself out as residing at the Sangamon Street Address, (2) two certificates of service in two unrelated minor cases showing that he had been personally served at the Sangamon Street Address in 2005 and 2012, (3) a certificate of genetic testing sent to respondent at the Sangamon Street Address in 2005, and (4) respondent's criminal history report from July 12, 2006 and August 27, 2006, showing his residence as the Sangamon Street Address. The order also noted that respondent testified that his State of Illinois Identification Card issued by the Secretary of State on August 8, 2006, as well as his identification card at the time of the instant hearing, listed his residence as the Sangamon Street Address. The court cited *Neely v. Board of Election Commissioners for the City of Chicago*, 371 Ill. App. 3d 694, 698 (1st Dist. 2007), for the proposition that the public record an individual creates of his residence is compelling evidence on that issue and reasoned that respondent's own admissions show that he has repeatedly held himself out as residing at the Sangamon Street Address.

¶ 18      Additionally, the court found the affidavits submitted by respondent, Shartina, and Lusenda "insufficient to refute the sheriff's return of service." The court reasoned that respondent's reliance on *Dickerson* was misplaced because the three affidavits were "not otherwise sufficient." The court took issue with respondent's affidavit finding that it was self-serving and lacked credibility, and

---

[2] The record does not contain a transcript from the June 4, 2024 hearing.

noted that all the affidavits were only corroborated by each other. The court found Shartina and Lusenda's affidavits inconsistent as to where respondent's usual place of abode was on the date of service and unreliable as both affidavits failed to explain or acknowledge respondent's consistent use of the Sangamon Street Address. Finally, the court reasoned that respondent's interpretation of *Dickerson* was "overly broad" citing *Sterne v. Forrest*, 145 Ill. App. 3d 268 (2d Dist. 1986), and *Department of Healthcare & Family Services ex rel. Sanders v. Edwards*, 2022 IL App (1st) 210409, to support its conclusion that other evidence, beyond a counter-affidavit and testimony from the process server, could rebut a defendant's affidavit challenging substitute service.

¶ 19       Respondent timely filed the instant notice of appeal on June 28, 2024.

¶ 20                                    II. ANALYSIS

¶ 21       On appeal, respondent argues that the circuit court erred in denying his 2-1401 Petition to vacate the Default Orders as void ab initio for lack of personal jurisdiction. He contends that the circuit court misapplied legal standards and improperly shifted the burden of proof regarding substitute service. Additionally, he argues that the circuit court improperly disregarded evidence which demonstrated that the Sangamon Street Address was not his "usual place of abode" at the time of service.

¶ 22       In parentage actions, "[a]n individual may not be adjudicated to be a parent unless the court has personal jurisdiction over the individual." See 750 ILCS 46/603(b); *Edwards*, 2022 IL App (1st) 210409, ¶ 42 ("It is axiomatic that a court must have personal jurisdiction over the parties to enter a valid judgment."). Personal jurisdiction may be established by either service of process as provided by statute or by a party's voluntary submission to the court's jurisdiction. *BAC Home Loans Servicing, LP*, 2014 IL 116311, ¶ 18; *Minikon v. Escobedo*, 324 Ill. App. 3d 1073, 1083 (1st Dist. 2001). "Under [the Illinois Code of Civil Procedure], proper service of summons is a

necessary element to obtaining jurisdiction over a party." *Home State Savings Association v. Powell*, 73 Ill. App. 3d 915, 917 (1st Dist. 1979).

¶ 23        "To enter a valid judgment, a court must have both jurisdiction over the subject matter and jurisdiction over the parties. A judgment entered by a court without jurisdiction over the parties is void and may be challenged at any time, either directly or collaterally." (internal citations omitted) *BAC Home Loans Servicing, LP v. Mitchell*, 2014 IL 116311, ¶ 17; *U.S. Bank Nat. Ass'n v. Johnston*, 2016 IL App (2d) 150128, ¶ 28 ("[A] failure to effect service as required by law deprives a court of jurisdiction over the person, and any default judgment based on defective service is void."); *Home State Savings Association v. Powell*, 73 Ill. App. 3d 915, 917 (1st Dist. 1979) ("[A]ny judgment rendered under circumstances where this jurisdictional standard has not been fully followed is void Ab initio for lack of jurisdiction over the defendant."). As such, "[a] petition under section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2020)) is the appropriate pleading to vacate a void judgment *** purportedly entered upon invalid service of process, more than 30 days after that judgment was entered." *Edwards*, 2022 IL App (1st) 210409, ¶ 43 (citing *Sarkissian v. Chicago Board of Education*, 201 Ill. 2d 95, 101 (2002)). The statutory requirements that a 2-1401 petition must (1) be filed within the two-years of entry of the judgment, (2) allege that the defendant acted with due diligence, and (3) that the defendant has a meritorious defense, do not apply when the petition attacks a judgment as void. *Sarkissian*, 201 Ill. 2d at 104 (citing *People v. Harvey*, 196 Ill. 2d 444, 452 (2001)). However, "[t]he petition must be supported by affidavit or other appropriate showing as to matters not of record." *Edwards*, 2022 IL App (1st) 210409, ¶ 43.

¶ 24 Here, prior to entering the Default Orders, the circuit court purportedly obtained personal jurisdiction over respondent via service by substitute service. Substitute service is governed by section 2-203 of the Illinois Code of Civil Procedure, which provides:

> "(a) *** service of summons upon an individual defendant shall be made *** (2) by leaving a copy at the defendant's **usual place of abode**, with some person of the family or person residing there, of the age of 13 years or upwards, and informing that person of the contents of the summons, provided the officer or other person making service shall also send a copy of the summons in a sealed envelope with postage fully prepaid, addressed to the defendant at his or her usual place of abode ***." (emphasis added) 735 ILCS 5/2-203(a) (West 2022).

¶ 25 In Illinois, "there is no hard and fast definition of 'usual place of abode' " and "each case must turn on its particular facts." *Edwards*, 2022 IL App (1st) 210409, ¶ 71. "The ultimate consideration in determining the propriety of substitute service is whether service at the chosen address was 'reasonably likely to provide the defendant with actual notice of the proceedings.' " *Edwards*, 2022 IL App (1st) 210409, ¶ 47 (quoting *Dohm*, 115 Ill. App. 3d at 289); see also *Central Mortgage Co. v. Kamarauli*, 2012 IL App (1st) 112353, ¶ 20 (" 'Such statutes presuppose that such a relation of confidence exists between the person with whom the copy is left and defendant that notice will reach defendant; they assume that such person will deliver the process or copy to defendant or in some way give him notice thereof.' " (Internal quotation marks omitted.) (quoting *Anchor Finance Corp. v. Miller*, 8 Ill. App. 2d 326, 330 (1956))).

¶ 26 A. Standard of Review

¶ 27    As an initial matter, we address the parties' disagreement over which standard of review should apply to this matter. Respondent argues that the appeal presents a question of law which should be reviewed *de novo*, while DHFS argues that the appeal presents a mixed question of law and fact which should be reviewed under the "manifest weight of the evidence" standard of review.

¶ 28    Respondent raises two distinct types of arguments on appeal. The first type of argument contends that the circuit court misapplied standards of law and employed an improper burden of proof as it applies to substitute service. The second type of argument contends that the court erred in determining the sufficiency of the parties' evidence and finding that the Sangamon Street Address was his usual place of abode.

¶ 29    When a challenge to the trial court's personal jurisdiction over a defendant is raised within a section 2-1401 petition, it "* * * normally 'presents a question of law, and rulings as to questions of law are considered *de novo*.' " (internal citations omitted) *Edwards*, 2022 IL App (1st) 210409, ¶ 44. This level of review applies where the trial court's ruling is entered based upon documentary evidence and without an evidentiary hearing. *Countrywide Home Loans Servicing, LP v. Clark*, 2015 IL App (1st) 133149, ¶ 30 ("This court reviews *de novo* the trial court's ruling on a motion to quash challenging the court's jurisdiction that was entered based on documentary evidence and without an evidentiary hearing." (citing *Equity Residential Properties Management Corp. Nasolo*, 364 Ill. App. 3d 26, 31 (1st Dist. 2006)); *R.M. Lucas Company v. Peoples Gas Light and Coke Company*, 2011 IL App (1st) 102955, ¶¶ 12-13 (reviewing the trial court's decision on a 2-1401 petition under a *de novo* standard where the petition was supported by affidavits and the parties engaged in oral argument but the trial court did not conduct an evidentiary hearing).

"However, if any material evidentiary conflicts exist, and the circuit

court conducts an evidentiary hearing to resolve those disputes, we

review the circuit court's factual findings for manifest weight of the evidence. Under this standard, the circuit court's determination may be reversed 'only when the opposite conclusion is clearly evident or where the factual findings upon which it is based are unreasonable, arbitrary, or not based on the evidence.' " (internal citations omitted) *Edwards*, 2022 IL App (1st) 210409, ¶ 44; see *Abbington Trace Condominium Association v. McKeller*, 2016 IL App (2d) 150913, ¶ 10; *Royal Extrusions Limited v. Continental Window and Glass Corporation*, 349 Ill. App. 3d 642, 645-46 (1st Dist. 2004); *TAC International, Inc. v. B & B Custom Auto, Inc.*, 299 Ill. App. 3d 522, 531-32 (1st Dist. 1998) ("[I]f there are disputes regarding issues of fact which 'determine whether the court has personal jurisdiction, the trial court must hear the testimony, evaluate its credibility, and resolve any material conflicts in the evidence.' " (quoting *Stein v. Rio Parismina Lodge*, 296 Ill. App. 3d 520, 523 (1st Dist. 1998)); *Ruprecht Co. v. Sysco Food Services of Seattle, Inc.*, 309 Ill. App. 3d 113, 118-19 (1st Dist. 1999); *Gaidar v. Tippecanoe Distribution Service, Inc.*, 299 Ill. App. 3d 1034, 1039 (1st Dist. 1998).

¶ 30      As it relates to the evidence regarding his usual place of abode, respondent does not contest the public record and admits that he used the Sangamon Street Address on his legal filings, state identification card, and as his "mailing address." As such, he claims there are no questions of fact or evidentiary disputes. Instead, he argues that, in determining whether substitute service was proper, the question is whether his use of that address was sufficient to find it as his "usual place

of abode." On the other hand, DHFS argues that the public record and respondent's own admissions demonstrate that there was conflicting evidence regarding respondent's "usual place of abode." Further arguing that because the circuit court conducted an evidentiary hearing, the court's ruling should be reviewed under the "manifest weight of the evidence" standard.

¶ 31   Although respondent does not contest the evidence presented by DHFS, this does not mean that the evidence did not present a material evidentiary conflict on the issue of his "usual place of abode." Respondent provided three affidavits which averred that the Normal Avenue Address and/or King Drive Address was his residence and that he did not reside at the Sangamon Street Address at the time of service. In opposition, DHFS provided evidence, including the public record and respondent's own legal filings, which demonstrated that he resided at the Sangamon Street Address.

¶ 32   Case law indicates that the public record one creates of their residency may be evidence on that issue. See *United Bank of Loves Park v. Dohm*, 115 Ill. App. 3d 286, 288-89 (2d Dist. 1983) (noting that evidence of a "usual place of abode" can include the defendant's driver's licenses and mail delivery, among other things); *Neely*, 371 Ill. App. 3d at 698-700 (acknowledging that an individual creates a public record of their residency through their voter registration). DHFS's response brief attached respondent's appearance, fee waiver, motion for DNA testing, and notice of motion in the instant case in which he indicated his address was the Sangamon Street Address. Additionally, the response attached two certificates of service from different cases which showed that personal service had been made on respondent at the Sangamon Street Address in 2005 and 2012, and respondent's criminal history report with three arrests between June 21, 2006 and August 27, 2006 which list the Sangamon Street Address as his residence. The circuit court was entitled to rely upon such documentary evidence as well as respondent's own affidavit claiming

that he regularly used the Sangamon Street Address to determine that evidentiary conflicts existed which warranted an evidentiary hearing.

¶ 33    Furthermore, while respondent's affidavit attempted to explain away his use of the Sangamon Street Address, he put his own credibility into question given his admission that he used the address to intentionally mislead and defraud the court system. Respondent averred that he used the Sangamon Street Address because he "did not want the Courts to know [his] actual address" due to his several arrests.,

¶ 34    Consequently, based upon the conflicting evidence and questions of credibility, the circuit court conducted an evidentiary hearing. At the hearing, the circuit court heard testimony from respondent and made credibility determinations based upon his testimony. Thus, the court's factual findings on respondent's usual place of abode present a mixed question of law and fact for which we review under a manifest weight of the evidence standard. However, respondent's arguments that the circuit court used improper legal standards and improperly shifted the burden of proof will be reviewed *de novo*. See *Edwards*, 2022 IL App (1st) 210409, ¶ 45 (reviewing the circuit court's decision on a motion to quash based upon its interpretation of case law and legal standards under *de novo* standard but reviewing the circuit court's factual findings regarding the respondent's "usual place of abode" under manifest weight of the evidence standard).

¶ 35              B. Respondent's Challenges to the Circuit Court's Ruling

¶ 36    Respondent first argues that the trial court legally erred in denying his 2-1401 Petition because, as he claims, the court "stated that reasonable notice was sufficient" to provide the court with personal jurisdiction over him when, instead, it should have determined whether the Sangamon Street Address was his usual place of abode. However, a plain reading shows that this is an inaccurate description of the court's order. Rather, the court merely recited case law and

considered whether substitute service at the Sangamon Street Address was "reasonably likely to provide the defendant with actual notice." As noted by many courts, this is the "ultimate consideration" when assessing whether service was proper. See e.g., *Edwards*, 2022 IL App (1st) 210409, ¶ 47; *Dohm*, 115 Ill. App. 3d at 289.

¶ 37    Furthermore, it is evident that the circuit court did not rest its decision on this rationale. The order devoted one paragraph to addressing whether service was reasonably likely to provide notice, while five pages were devoted to determining respondent's "usual place of abode" by analyzing the sufficiency of the parties' evidence, weighing such evidence, and making credibility determinations. Thus, we cannot find that the court erred in considering whether the substitute service was reasonably likely to provide respondent with actual notice.

¶ 38    To that end, respondent also claims that the circuit court legally erred by rejecting his affidavits. He argues that the circuit court was required to take the affidavits as true because DHFS did not present evidence which contradicted his claim that he only used the Sangamon Street Address as a mailing address and instead resided at the Normal Avenue Address and/or the King Drive Address. The circuit court is only required to take the defendant's affidavit as true "[i]f the plaintiff fails to introduce evidence to rebut the defendant's affidavit and create an issue of fact." *Edwards*, 2022 IL App (1st) 210409, ¶ 49 (citing *Sterne*, 145 Ill. App. 3d at 274-76); see *LaMotte v. Constantine*, 92 Ill. App. 3d 216, 217 (1st Dist. 1980) (appellate court reversed and vacated the default judgment based upon affidavits from the defendant and his father stating that the defendant did not live with his father at the time of service where plaintiff failed to present a counter-affidavit or other rebuttal evidence).

¶ 39    As noted above, DHFS presented evidence such as respondent's legal filings, certificates of personal service, and his criminal history report which demonstrated that he resided at the

Sangamon Street Address. Of particular importance, the criminal history report which showed 3 separate arrests between June 21, 2006 and August 27, 2006 encompassed the date of substitute service August 8, 2006. Incredulously, respondent claims that the evidence corroborates the affidavits. It is unclear if he means to say that the evidence demonstrates that the Sangamon Street Address was merely a mailing address, even though this is not plainly evident on the face of the evidence, or if he means that the evidence supports his affidavit testimony that he fraudulently used the Sangamon Street Address for years to avoid the legal system. Either way, we are not compelled by this rationale.

¶ 40    We agree that the public record respondent created regarding his residence provides some evidence of that fact. Thus, DHFS presented sufficient evidence to rebut respondent's affidavits and create an issue of fact. Further, as discussed above, respondent's affidavit put his credibility into question. For these reasons, the circuit court was not required to take the affidavits as true.

¶ 41    Respondent also contests the circuit court's factual findings claiming that there was no evidence presented that the Sangamon Street Address was his "usual place of abode" and all three affidavits specifically aver that he did not reside at the Sangamon Street Address. As noted above, "there is no hard and fast definition of 'usual place of abode' " and "each case must turn on its particular facts." *Edwards*, 2022 IL App (1st) 210409, ¶ 71. Furthermore, we consider the whole record in determining whether substitute service was proper. *Id.* ¶ 48. We review the court's factual determination under a manifest weight of the evidence standard.

¶ 42    DHFS argues that this court is compelled to presume the circuit court's decision was correct because the record on appeal is incomplete.

> "[A]n appellant has the burden to present a sufficiently complete
> record of the proceedings at trial to support a claim of error, and in

the absence of such a record on appeal, it will be presumed that the
order entered by the trial court was in conformity with law and had
a sufficient factual basis. Any doubts which may arise from the
incompleteness of the record will be resolved against the appellant."
*Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984); see *One Fish Two
Fish, LLC v. Struif*, 2021 IL App 191441, ¶ 50.

To that end, respondent has failed his burden to provide a sufficiently complete record by attaching the transcript from the evidentiary hearing. The trial court found that respondent's "limited testimony" "lacked credibility in its entirety" and determined that the Sangamon Street Address was respondent's usual place of abode. We, therefore, must presume that the circuit court had sufficient factual basis for this determination.

¶ 43    Notwithstanding the incompleteness of the record, we further find that the circuit court's determination was not against the manifest weight of the evidence based upon the evidence in the record.

¶ 44    In support of his 2-1401 Petition, respondent presented three affidavits from himself, Shartina, and Lusenda. Each of the affidavits claimed that respondent did not reside at the Sangamon Street Address at the time of service and instead resided either with his aunt Slyvia and cousin Shartina at the Normal Avenue Address or with then-fiancée Lusenda and their daughter at the King Drive Address. Respondent's affidavit claimed that he had two places of residence on August 8, 2006. He also presented a HUD family report dated March 2008 which showed that he was listed as a resident of the Normal Avenue Address.

¶ 45    In opposition, DHFS presented extensive documentation demonstrating that the Sangamon Street Address was respondent's residence. Specifically, in October 2006, less than 2 months after

the Default Orders were entered, respondent filed documents in this case signed under oath in which he listed the Sangamon Street Address as his address. Additionally, DHFS provided two certificates of service from unrelated paternity cases, one from 2005 and one from 2012, which showed that he had been served by personal service at the Sangamon Street Address. DHFS provided respondent's criminal history report showing arrests in June, July, and August 2006 where the Sangamon Street Address was identified at his residence.

¶ 46     While we do not have a transcript of respondent's testimony, the trial court's order indicated that he testified that his State of Illinois Identification Card on August 8, 2006, listed that his residence was the Sangamon Street Address and that the address on his current I.D. listed the same as well.

¶ 47     Ultimately, the circuit court found both respondent's affidavit and testimony self-serving and lacking in credibility in its entirety and particularly noting that respondent's admission that he "did not want the courts to know his actual address" was an attempt to intentionally defraud the court. The court found all the affidavits unpersuasive as they were inconsistent and only corroborated by each other rather than any independent evidence. The court also took issue with the fact that neither Shartina nor Lusenda's affidavits addressed or explained respondent's use of the Sangamon Street Address.

¶ 48     These findings are well supported by the record. Respondent's affidavit plainly demonstrates questions of credibility and the record on his testimony is incomplete. As the trial court sat in a position to determine his credibility, we will not disturb that determination. *Racky v. Belfor USA Group, Inc.*, 2017 IL App (1st) 153446, ¶ 107 ("[A] reviewing court will not disturb the trial court's determination of credibility because the trial court has a superior vantage point, which cannot be reproduced from the cold record, to observe and judge the witnesses' demeanor

and credibility."). Furthermore, each affidavit claims that, on August 8, 2006, respondent resided at either the Normal Avenue Address or the King Drive Address. While it is possible for a defendant to have two residences, none of the affiants can affirmatively state where respondent was residing on the date of service. This could be because the salient facts occurred 17 years prior or it could be because the parties are intentionally trying to hide the ball. Either way, it demonstrates inconsistencies in and lack of clarity from the affidavits especially in light of the circuit court's adverse credibility determinations against respondent. While not dispositive on the issue of respondent's usual place of abode, we note that Lusenda and Shartina refer to Annie Glass as respondent's mother, while he refers to her as his grandmother, further supporting the court's finding that the affidavits were inconsistent. While respondent claims that his affidavits were corroborated by the HUD family report, the report was dated March 21, 2008, well after service was completed. It does not present sufficient or compelling independent evidence that respondent was living at the Normal Avenue Address on August 8, 2006.

¶ 49 Additionally, the court's reliance on DHFS's evidence is supported by the record. There were multiple pieces of evidence provided which established that not only did respondent reside at, and still resides at, the Sangamon Street Address long term but also, and most germane, that he resided there on the date of service. Respondent had been personally served at the Sangamon Street Address in 2005 and 2012, providing direct evidence that he was found at the address multiple times. On August 8, 2006, his I.D. listed his residence as the Sangamon Street Address. Under law, an application for the issuance of a license must state the applicant's *residence address*. See 625 ILCS 5/6-106(b). The I.D. was further evidence that respondent resided at the Sangamon Street Address on the date of service (his testimony revealed that even his current I.D. states that the Sangamon Street Address is his residence). Leading up to service, respondent was arrested on

June 21, 2006, and July 12, 2006. Following service, respondent was arrested once on August 27, 2006. Each of his arrests listed the Sangamon Street Address as his residence, providing further evidence that he was residing there immediately leading up to and immediately following his arrest. Furthermore, respondent admitted his use of and residence at the Sangamon Street Address multiple times in this matter. Following the entry of the Default Orders, he filed multiple documents listing his address as the Sangamon Street Address and his affidavit confirmed this stating that it was an address that he commonly used. In considering the record as a whole, the circuit court's finding that the Sangamon Street Address was respondent's usual place of abode is clearly supported and was not against the manifest weight of the evidence.

¶ 50        Finally, respondent contends that the circuit court legally erred because it improperly shifted the burden of proof by requiring him to "overcome" the sheriff's certificate of service to prove his usual place of abode by clear and convincing satisfactory evidence. Rather, as respondent argues, the court should have placed the burden on DHFS's to prove strict compliance with the statutory requirements for substitute service, including service at his "usual place of abode." On this argument, respondent is only partially correct.

¶ 51        For substitute service, the process server's certificate of service must demonstrate strict compliance with every requirement of the statute since the presumption of validity that attaches to personal service does not apply. *Edwards*, 2022 IL App (1st) 210409, ¶ 48 (*citing State Bank of Lake Zurich v. Thill*, 113 Ill. 2d 294, 309 (1986). "To determine whether substitute service was proper, the reviewing court must consider the whole record, including the pleadings and the certificate." *Id.* The process server's certificate is prima facie evidence of service that can only be set aside by clear and satisfactory evidence. *Id.*; *Nibco, Inc. v. Johnson*, 98 Ill. 2d 166, 171 (1983) (noting that an uncorroborated affidavit from the person served is not sufficient to set aside the

certificate). "However, this rule applies only to matters that are within the knowledge of the process server, such as \*\*\* where service was made, and who accepted the service." *Id.*

¶ 52   On the other hand, information that is not within the process server's knowledge (i.e. the defendant's usual place of abode) can be attacked by an uncorroborated affidavit of the defendant. *Id.* at ¶ 49 (citing *Four Lakes Management & Development Co. v. Brown*, 129 Ill. App. 3d 680, 684 (2d Dist. 1984). This is because with substitute service an essential element, service at defendant's 'usual place of abode,' generally is not within the process server's personal knowledge. *Four Lakes*, 129 Ill. App. 3d at 684. "If the plaintiff fails to introduce evidence to rebut the defendant's affidavit and create an issue of fact, the assertions in the defendant's affidavit must be taken as true." *Edwards*, 2022 IL App (1st) 210409, ¶ 49 (citing *Sterne*, 145 Ill. App. 3d at 274-76).

¶ 53   To that end, while the sheriff's certificate of service was prima facie evidence that service was made on Annie Glass at the Sangamon Street Address, it was not prima facie evidence that the Sangamon Street Address was respondent's usual place of abode. There is nothing in the record to indicate that the sheriff had personal knowledge of respondent's usual place of abode. Thus, even respondent's uncorroborated affidavits could have attacked the certificate of service on the issue of his "usual place of abode." It was, therefore, improper for the circuit court to consider the certificate of service as evidence of respondent's usual place of abode, i.e., "Respondent has not presented sufficient grounds on which to challenge the certificate of service \*\*\*," "[t]he affidavits filed by Respondent are insufficient to refute the sheriff's return of service," "[t]he affidavits of Respondent's cousin and ex-girlfriend do not provide the clear and satisfactory evidence which is required to set aside a certificate of service."

¶ 54        However, a review of the record demonstrates that the court did not rest its decision on an evidentiary presumption in favor of the certificate of service. Since DHFS presented rebuttal evidence, the court was not required to take the assertations in respondent's affidavits as true. Independently from the certificate of service, the court properly (1) made credibility determinations on respondent's affidavit and testimony, (2) found inconsistencies in and lack of evidentiary corroboration of the affidavits, and (3) weighed DHFS's rebuttal evidence. Ultimately, the court also determined that the evidence presented by respondent failed to meet a "preponderance of the evidence" standard and did not even present a "proverbial close case," rather than resting on a clear and convincing standard. The improper evidentiary presumption afforded to the certificate of service was harmless error given the evidence in the record, the circuit court's credibility determinations, and the incompleteness of the record provided by respondent. See *J.L Simmons Co. v. Firestone Tire & Rubber Co.*, 108 Ill. 2d 106, 115-16 (1985) (judgment will not be disturbed unless the improperly admitted evidence affected the outcome or changed the result).

¶ 55                                III. CONCLUSION

¶ 56        For the foregoing reasons, we affirm the judgment of the circuit court denying the respondent-appellant's "Petition to Declare Default Order of Parentage and Default Uniform Order for Support Entered on September 1, 2006 as Void Ab Initio."

¶ 57        Affirmed.